IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KENNETH LITWIN, JR., an individual, | ) ) | |
| Plaintiff, | ) | |
| v. | ) ) | No 19 C |
| INTERNATIONAL UNION OF BRICKLAYERS, ADMINISTRATIVE DISTRICT COUNCIL 1 OF ILLINOIS AND THE JOINT ARBITRATION BOARD OF THE INTERNATIONAL UNION OF BRICKLAYERS, | ) ) ) ) ) ) ) | Judge Magistrate Judge |
| Defendants. | ) | |

**COMPLAINT FOR
DECLARATORY JUDGMENT**

Plaintiff Kenneth Littwin, Jr. (or "Junior"), by his attorney and pursuant to Rule 57 of the Federal Rules of Civil Procedure, §2201 of the Judiciary Code, and the Federal Arbitration Act, now complains of defendants International Union of Bricklayers, Administrative District Council 1 of Illinois ("Union"), and the Joint Arbitration Board of the International Union of Bricklayers, as follows:

**INTRODUCTION**

Plaintiff brings this case because the Union has mistakenly asserted that Plaintiff personally has a collective bargaining agreement with Union and is personally liable for using non-union workers. Plaintiff seeks a declaration from this Court as to the rights and legal relations of the parties herein. Plaintiff also seeks a declaration that an arbitration award, rendered

3

by the Union's Joint Arbitration Board and which became final within ninety days of the filing of this complaint, be vacated, declared null and void, and of no legal effect.

References herein to paragraphs in the supporting declaration of Plaintiff (Exhibit A), are "(Exhibit A_____)."

## COUNT I - Declaratory Judgment

Jurisdiction and Venue

1. Jurisdiction of this cause is based on Section 2201 of the Judiciary Code. There is a substantial controversy between the parties arising under federal labor law and is within this Court's jurisdiction.

2. Venue is founded pursuant to 29 U.S.C. Section l 132(e)(2) in this District.

3. Littwin is an individual residing in this district. The Union is a labor organization with offices in this district. The Joint Arbitration Board (or "JAB") is a dispute resolution body consisting of four individuals: two Union and two signatory employer representatives.

Background

4. In 2007 LCS Construction Co. ("LCS"), an entity owned and operated by Plaintiff (or "Junior"), signed a memorandum of understanding with the Union (See Exhibit A 3, Exhibit B). This document, which incorporated by reference the area agreement between the Union and various employer associations, specifically stated that the agreement was between the Union and a

corporation, LCS.

5. Junior closed his company's doors on April 30, 2017. He then sent a letter dated May 16, 2017 to the Union, advising the Union that LCS was going out of business and was terminating the collective bargaining agreement (Exhibit C). About six weeks later he went to work at Plaintiffs company (Exhibit A 5-7) He brought no jobs or customers with him; he had none of either (Exhibit A 7).

6. At no time did the Union respond to the May 16, 2017 notice, either acknowledging receipt or issuing a declaration that the termination notice was ineffective (Exhibit A 5). Over a half year later, in January 2018, the Union filed a grievance against LCS. The grievance alleged that LCS had assigned bargaining unit work on a non-union basis without paying wages at scale, and without paying into the Union's pension and welfare funds (Exhibit A 6).

7. In November 2018 the Union filed a second grievance, naming LCS, Plaintiff, his father Ken Littwin Sr. ("Senior") and Local Contracting Services, Senior's company (Exhibit A 6).

A final decision by an arbitration board was issued on July 15, 2019 and notice of this decision was mailed to Plaintiff and received on July 18, 2019 (see Exhibit D). A cover letter signed by James Allen, the Union's president, advised the award from the Joint Arbitration Board was final. *Id.* This award incorporates one from December 2018, denoted as Exhibit D-2. The December 2018 award stated that it was leaving itself open to supplementation of any payroll data.

Grounds for the Declaratory Judgment

8. The Union's grievance and subsequent arbitration award purported to create privity between Plaintiff and the Union, as if he were LCS prior to its shutdown. The factual assertions made in support can charitably be described as thin. Plaintiff is an individual and is not personally bound by a collective bargaining agreement between a company and a labor organization.

9. The Union cannot impose liability on an individual in lieu of the true target of its grievance, LCS.

10. Plaintiff's corporation was and is not subject to piercing of the corporate veil. His company until it went out of business was in good standing, had observed the formalities required of an Illinois corporation, and did not use corporate funds for personal purposes.

The Union's Theory of Personal Liability

11. The Union has contended that Plaintiff is personally bound to the collective bargaining agreement.

12. In correspondence dated November 20, 2018 (Exhibit G) the Union

6

claimed that since LCS had closed its doors, Plaintiff became personally liable for the acts of LCS:

> ... The Union bases that assertion on the relationship among the two individuals and two businesses, the manner in which the two businesses have been operated, and other factors that I assume will be presented at the hearing...

13. The ensuing arbitration award (referring to Plaintiff's father as "senior") stated, in part:

> All this evidence supports the Union's claims that senior and [Local Contracting] should both be found to be bound to the labor contract LCS signed based on the relationship among the individuals and businesses, the way the businesses were operated, and what we conclude was an intentional plan to use the separate businesses to avoid the obligations of the contract. *We also take note of the fact that even though they were notified of the hearing, and the hearing date was rescheduled at the request of their lawyer, senior and local both failed to attend the hearing and attempt to explain their side of the matter.* Mr. Bennett explained a party that disputes that an arbitrator or an arbitration panel has authority over it can state that is its position and still participate in the hearing and present whatever information and arguments it wants without losing the ability to make its claim over jurisdiction in court.
> We think the fact that local and senior did not do that is *probably* because they recognized their own misconduct, and did not want to have to try to answer questions or be called on to respond to the evidence the Union presented [emphasis added].

Applicable Law

16. Junior's decision to terminate the LCS contact with the Union was motivated by legitimate business concerns: LCS was going broke. *Trustees of the Pension. Welfare and Vacation Funds IBEW Local 701 v. Favia Electric Company,*

995 F2d 785 (7th Cir. 1993). He had a good faith belief that LCS had properly terminated its contract with the Union.

17. The Union's grievance evidently sought to pierce the corporate veil as to LCS. Federal courts apply state law when considering this form of liability. *Chicago District Council of Carpenters Pension Fund v. Sunshine Carpet Services et al,* 866 F. Supp 1113 (N.D. III. 1994); *Levitt v. Ingersoll Rand Fin. Corp.,* 874 F.2d 1186, 1193-1194 (7th Cir.. 1989).

18. One of the primary purposes of doing business as a corporation is to insulate stockholders from unlimited liability for c0111orate activity. *Peetoom et al v S\vanson,* 778 N.E.2d 291, 293 (2nd Dist. 2002). This encourages investment in corporations and risk-taking by entrepreneurs and others. As Justice Douglas eloquently put it, "[l]imited liability is the rule not the exception; and on that assumption large undertakings are rested, vast enterprises are launched, and huge sums of capital attracted." *Anderson v Abbott,* 321 U.S. 349, 362 (1944).

19. The piercing of a corporate veil is an equitable remedy and is not itself a cause of action. It is applied where the corporation is merely the alter ego or business conduit of another person or entity.

20. To permit piercing of a corporate veil each of these conditions are invariably set forth by the courts: a) there must be such a unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist; and b) circumstances must be such that an adherence to the fiction of separate corporate existence would sanction a fraud or promote injustice. *Hystro Products Inc v MNP Corp.,* 18 F3rd 1384, 1388-1389 (7[h] Cir. 1994). The Seventh Circuit in *Hystro* refined this test by applying these factors: 1) a failure to maintain adequate corporate records or to comply with corporate

formalities, 2) commingling of assets or frmds, 3) undercapitalization, and 4) one corporation treating the assets of another corporation as its own.

21. In the instant case, Plaintiff started up a small, one-person company with modest paid-in capital. But it exceeded the company's costs of operation. Furthermore undercapitalization is not enough to justify a disregard of the corporate entity, and what is paid in as equity at the outset of the business is not the absolute point of reference for evaluating capitalization. *Compare, Central Illinois Carpenters Health & Welfare Trust Fund et al v. Helen Struben et al,* _FSupp2d_, Case No. 05-1094 (slip opinion, Gorman Mag. Judge)(C.D. Ill. 2009)("While $7500 may have been adequate at the outset of this business [in 2000], by 2001, S&S was indeed undercapitalized,") at p. 17.

22. There is no factual basis for using an alter ego doctrine to lump LCS and Local Contracting together (which the Union seems to have done), then with no evidence of an evil motive extending liability to Plaintiff. Local Contracting was hardly a sham corporation with no capitalization, and is and has been a corporation of good standing.

23. The Union's position implies that Plaintiff is personally liable for the wages that allegedly should have been paid by LCS. If Plaintiff is correct on this score, no facts support an application of the "alter-ego" doctrine. There is no evidence of unlawful motive or intent. "[U]nlawful motive or intent are critical inquiries in an alter ego analysis," *International Union of Operating Engineers, Local 150. AFL-C/0 vs. Center Contractors, hlc.,* 831 F2d 1309, 1312 (7th Cir. 1987), citing *Iowa Ex:press Distributing. Inc. v. NLRB,* 739 F2d 1305, 1311 (8th Cir. 1984).

Conclusion

20. The basis for the Union's assertion that Plaintiff is bound to a collective bargaining agreement entered into between LCS and the Union is: a) two members of the same family, each ran a company, one of which was signatory, b) the son·s business folded and he went to work for his father, c) a suspected ·'intentional plan" hatched by the two, and d) neither Plaintiff nor his son showed up at the arbitration hearing. The JAB award mentioned hearsay about confused employees uncertain of who their employer was, and other hearsay provided at the hearing. If this is all the Union has it doesn't have much. The alter-ego doctrine does not apply here, and no facts justify piercing the corporate veil.

**WHEREFORE,** Plaintiff prays for declaratory relief as follows:

A. that this Court declare that Kenneth Littwin Jr. is not signatory to or bound by a collective bargaining agreement with Defendant International Union of Bricklayers, Administrative District Council 1 of Illinois,

B. that this Court declare that Kenneth Littwin Jr. is not a successor to, or alter ego of LCS, a defunct company, or of Local Contracting Services,

C. that this Court declare that Plaintiff Kenneth Littwin Jr. is not bound by the July 15, 2019 arbitration award entered against him by the Joint Arbitration Board, and,

D.  that this Court grant Plaintiff such other and further relief as it may deem appropriate under the circumstances.

### Count II - JAB Acted Outside its Contractual Scope and the Award Should be Vacated

For paragraphs 1-24 of Count II of the Complaint Plaintiff incorporates by reference as though fully set forth in this Count II all of the preceding allegations of this Complaint, *in haec verba*.

21. It is well established that an arbitration award is legitimate only so long "as it draws its essence from the collective bargaining agreement." *United Steelworkers v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 597 (1960). An award should be vacated if it conflicts with the plain meaning of the labor agreement. *Operating Engineers Local 9* v. *Shank-Artukovich,* 751 F2d. 364 (10th Cir. 1985).

22. Here, the Union is exploiting an arbitration award to accomplish findings of alter ego and piercing of the corporate veil as to an individual, ignoring the bedrock labor law that an arbitrator is "confined to interpretation and application of the collective bargaining agreement; he does not sit and dispense his own brand of industrial justice," *id*. The JAB considered outside law in making its decision. drawing upon creditor-debtor law and the equitable remedies under Illinois law to extend the LCS contract to plaintiff. *Roadmasters Corp.* v. *Laborers Local 50-l.* 851 F2d. 886, (7th Cir. 1988).

23. The means to determine that Plaintiff is individually bound to the LCS-Bricklayers is either through piercing the corporate veil of LCS or by identifying Plaintiff as an "alter ego" of LCS. Such fact-finding and analysis are outside the scope of an

arbitrator's interpretation and application of a labor agreement. (See "A") The Seventh Circuit has held that judicial review of arbitration awards is extremely limited, but when an arbitrator "must... have based his award on some body of thought, or feeling, or policy, or law that is outside the contract... then the award can be said not to ·draw its essence from the collective bargaining agreement"' *Polk Brothers* v. *Chicago Truck Drivers,* 973 F2d. 593 (7th Cir, 1992).

24. The JAB rendered an award that Plaintiff assumes was a reinforcement of the belief that Plaintiff was bound to the LCS contract. But for the award, to reinforce anything, had to have devoted at least a sentence to the rationale for converting Plaintiff to an "employer" or a piercing the corporate veil. There is not one iota of reasoning or analysis in the award to support these implied findings. This is not surprising since labor arbitration panels should not and do not made determinations about what is adequate equity capitalization of shareholders, what constitutes compliance with the Illinois Business Act, and whether a corporation has maintained adequate records as required by law. Judging from the amorphous content of the award's vague imposition of contractual liability on Plaintiff, the authors of the award themselves obviously agree with the preceding sentence.

25. To the extent the claim of individual contractual privity relies on the JAB award, it is fundamentally flawed. The award should be vacated because its rendering fell outside the bounds of the contract. The JAB looked to the stars, rather than the contract, when determining that Plaintiff was a party to the contract between LCS and the Union.

**WHEREFORE,** Plaintiff prays for declaratory relief as follows:

A.    that this Court declare that Kenneth Littwin Jr. is not signatory to or bound by a collective bargaining agreement with Defendant International Union of Bricklayers, Administrative District Council I of Illinois,

B.    that this Court declare that Kenneth Littwin Jr. is not a successor to, or alter ego of LCS, a defunct company, or of Local Contracting Services,

C.    that this Court declare that Plaintiff Kenneth Littwin Jr. is not bound by the May 13, 2019 arbitration award entered against him by the Joint Arbitration Board, and,

D.    that this Court grant Plaintiff such other and further relief as it may deem appropriate under the circumstances.

        Respectfully submitted,

        **KENNETH LITTWIN, JR.**

        By:    /s/ Burr E. Anderson
                  One of his Attorneys

Burt E. Anderson
Anderson Law Offices PC
400 Lake Cook Road- Suite 221-A
Deerfield Illinois 60015
(312) 957-1100
BurrAnderson@AndersonLawIL.com
IL ARDC: #3121649