## DECLARATION

**COUNTY OF DUPAGE**    )
                        ) SS
**STATE OF ILLINOIS**   )

I, Christine Connolly, of full age, being duly sworn on my oath, hereby say as follows under penalty of perjury:

1.      I have personal knowledge of the information contained in this declaration, and if called upon to do so, would testify to each statement contained here.

2.      I am an administrative assistant employed by Administrative District Council 1 of Illinois of the International Union of Bricklayers and Allied Craftworkers, AFL-CIO ("Union").

3.      My responsibilities include providing notices of grievances and hearings before the contractual Joint Arbitration Board ("JAB"), attending hearings before the JAB, providing notice of awards issued by the JAB, monitoring and maintaining records of service of JAB awards and of papers involving legal actions brought by and against the Union, monitoring compliance with JAB awards, monitoring and keeping records of contract cancellation notices, and maintaining records of changes to the various area-wide collective bargaining agreements to which the Union is a party.

4.      I carried out certain of these responsibilities in connection with cases submitted to the JAB by the Union against LCS Construction Company ("LCS"), Local Contracting Services Construction Co. ("Local"), Kenneth Littwin, Jr. ("Junior"), and Kenneth Littwin, Sr. ("Senior").

5.      The document attached to the Union's Rule 56.1 statement as Exhibit B is a Memorandum of Understanding between the Union and LCS, which the Union maintains in its contracts file.

**Exhibit A**

Case: 1:19-cv-06826 Document #: 34-2 Filed: 06/15/20 Page 2 of 47 PageID #:256


6.      The document attached to the Union's Rule 56.1 statement as Exhibit C is a copy of portions of the 2017-2020 Association Agreement.

7.      The Union and the applicable associations reached agreement on a new contract effective June 1, 2020 but that agreement has not yet been printed. I am familiar with the changes to which the parties agreed and none of them affects the attached portions of the 2017-2020 Agreement, except to change the hourly wage and benefit fund contribution rates.

8.      Through the period covered by the arbitration proceedings described here, LCS never gave notice during a "window period" before expiration of the Association Agreement that it was terminating the Memorandum of Understanding, and the Union never provided such notice of termination to LCS.

9.      The documents attached to the Union's Rule 56.1 statement as Exhibits E and F are copies of the letter and explanation of procedures I sent to LCS and Junior on June 5, 2017 to inform them of the claims being made against them and to inform them that those claims would be presented before the JAB at a hearing on June 21, 2017.

10.      I attended the June 21 hearing. Representatives of the Union and affiliated fringe benefit trust funds ("Benefit Funds") presented the case in support of the grievance, and nobody appeared on behalf of LCS or Junior.

11.      After the presentations and arguments were completed at that June 21 hearing, the arbitrators recessed and met privately, and then returned to announce their decision, and subsequently prepared a written award, a copy of which is attached to the Union's Rule 56.1 statement as Exhibit G.

12.      In addition to mailing copies of the award to LCS and Junior, we arranged for the award to be personally served, and the Affidavit of Service attached to the Union's Rule 56.1

2

statement as Exhibit H states that the process server served the award on Junior at his home in Rolling Meadows, Illinois on January 17, 2018.

13.     Neither Junior nor LCS filed any legal action against the Union between when the award attached as Exhibit F was issued and served on them and the time they answered the Union's complaint seeking enforcement of that award on September 5, 2018.

14.     The document attached to the statement as Exhibit I is a copy of a letter I sent to Junior, LCS, Local, and Senior on November 20, 2018 to inform them of a grievance against them and of the scheduled December 4, 2018 hearing date. Those letters were accompanied by the same explanation of the JAB's procedures as submitted as Exh. F.

15.     I learned the scheduled December 4, 2018 hearing date was postponed because an attorney representing Senior and Local requested the postponement; and in addition to the Union's lawyer providing notice of the new date through that other attorney, I helped inform all four parties of the new hearing date, which was December 21, 2018.

16.     I attended the arbitration hearing on December 21. Representatives from the Union and the Benefit Funds presented the case in support of the grievance but nobody appeared on behalf of any of the contractor parties. Because the attorney for Senior and Local had requested the postponement and been informed of the new date, and had not provided notice that she and her clients would not be attending, we delayed the start of the hearing for over an hour until the Union's lawyer informed us he had reached somebody from that other attorney's office and learned they would not be attending.

17.     The representatives from the Union and the Benefit Funds presented the case and after the presentations and arguments were concluded, the arbitrators deliberated and announced

3

a decision, and later issued a written award that is attached to the Union's fact statement as Exhibit J.

18.     I was responsible for sending that award on the four contractor parties, and I sent all of them copies of the award along with a cover letter on February 20, 2019, and received notification that all four of them received the mailings.

19.     I was informed the attorney for Senior and Local asked that the hearing be reconvened as was provided for in the award, and I was involved in scheduling the new hearing date for April 3, 2019 and notifying Local and Senior.

20.     I was present for that further hearing on April 3, 2019. Representatives for the Union and the Benefit Funds attended and presented their claims and arguments about the work on the four projects that the dispute involved, and Senior attended and presented arguments for himself and for Local.

21.     After all the parties made their arguments and presentations, and submitted the documents they wanted, the arbitrators concluded the hearing, deliberated, and then reached a decision, which they later prepared as a written award and a copy of which is attached to the Union's statement as Exhibit K.

22.     I sent the April 2019 award and another copy of the December 2018 award, which is designated as Exhibit J, to Local and Senior, and also to LCS and Junior, along with a cover letter dated May 13, 2019, a copy of which is attached to the Union's statement as Exhibit L; and a copy of the signed Postal Service form showing receipt by Local and Senior on May 31 is attached to the Union's statement as Exhibit M.

23.     The Union received a lawsuit that I recognized was a challenge to that April 2019 award on approximately August 26, 2019. That lawsuit named Senior but did not include Local

as a plaintiff, and Local never filed a lawsuit or took any legal action against the Union through the time it filed its answer to the Union's complaint in Case No. 19 c 8380 on February 25, 2020.

24.     I sent Junior and LCS a letter on May 10, 2019 informing them of a grievance and an arbitration hearing scheduled for June 13. A copy of the cover letter I sent is attached to the Union's statement as Exhibit N, and I also included a copy of the Exh. F explanation of procedures.

25.     I attended the hearing that was held by the JAB on June 13. Representatives of the Union and Benefit Funds presented the case in support of the grievance and nobody appeared for Junior or LCS.

26.     After hearing the presentations and receiving the evidence from the representatives of the Union and Benefit Funds, the arbitrators concluded the hearing, conducted their deliberations, and reached a decision, and then prepared a written award setting forth their decision, a copy of which is attached to the Union statement as Exhibit O ("June 2019 Award"). I am aware that this document states on the first page that the hearing was held on June 13, 2018, but that was a typographical error and the hearing was actually held June 13, 2019.

27.     I mailed a copy of the June 2019 Award to Junior and LCS on July 15, 2019, along with a cover letter, a copy of which is attached as Exhibit P.

28.     On November 23, 2019, the Union received a lawsuit that I recognized was a challenge to the June 2019 Award. That lawsuit named Junior as a plaintiff but it did not include

5

LCS as a plaintiff, and LCS never filed a lawsuit or took any legal action against the Union through the time it filed its answer to the complaint in Case No. 19 c 8380 on February 25, 2020.

I have read the foregoing declaration and state under penalty of perjury that it is true and correct to the best of my knowledge, information, and belief.

Christine Connolly

Date: 6 · 15 · 2020

6

40135

## MEMORANDUM OF UNDERSTANDING

### IT IS HEREBY STIPULATED AND AGREED BY AND BETWEEN

NAME OF CONTRACTOR: *LCS Construction Co.*

ADDRESS: *3910 Sterling Avenue, ~~Downers~~*

*Downers Grove, IL 60515*

TELEPHONE: *(630) 515-0826* FAX: *(630) 515-1106*

PLEASE INDICATE THE FOLLOWING:

*X* CORPORATION

_____ PARTNERSHIP

_____ SOLE OWNER

_____ OTHER, SPECIFY

FEIN #: *36-4375374*

AND ITS SUCCESSORS OR ASSIGNS (THE "EMPLOYER"), AND **ILLINOIS DISTRICT COUNCIL NO. 1 OF THE INTERNATIONAL UNION OF BRICKLAYERS AND ALLIED CRAFTWORKERS, AFL-CIO**, CONSISTING OF **LOCAL UNIONS 20, 21, 27, 56, AND 74**, AND ANY SUCCESSOR THERETO (THE "DISTRICT COUNCIL"), AS FOLLOWS:

**1.** THE EMPLOYER RECOGNIZES THE DISTRICT COUNCIL AS THE SOLE AND EXCLUSIVE COLLECTIVE BARGAINING AGENT FOR ALL EMPLOYEES PERFORMING WORK OF THE SORT AND IN THE LOCATIONS DESCRIBED IN THE ASSOCIATION AGREEMENTS AS DEFINED IN ¶ 2 OF THIS MEMORANDUM OF UNDERSTANDING (THE "EMPLOYEES") FOR THE PURPOSE OF ESTABLISHING RATES OF PAY, FRINGE BENEFIT CONTRIBUTIONS, HOURS OF EMPLOYMENT, AND OTHER TERMS AND CONDITIONS OF EMPLOYMENT. THE EMPLOYER ACKNOWLEDGES AND AGREES IN RESPONSE TO THE DISTRICT COUNCIL'S CLAIM THAT THERE IS NO GOOD FAITH DOUBT THAT THE DISTRICT COUNCIL HAS BEEN AUTHORIZED TO AND IN FACT DOES REPRESENT A MAJORITY OF THE EMPLOYEES, AND THEREFORE THE EMPLOYER RECOGNIZES THE DISTRICT COUNCIL AS THE SOLE AND EXCLUSIVE COLLECTIVE BARGAINING AGENT FOR THE EMPLOYEES UNDER SECTION 9(A) OF THE NATIONAL LABOR RELATIONS ACT.

**2.** THE EMPLOYER AGREES TO BE BOUND BY THE TERMS AND CONDITIONS OF EMPLOYMENT COVERING THE TYPE OF WORK AND THE LOCATIONS WHERE THE WORK IS PERFORMED AS SET FORTH IN THE AGREEMENT OR AGREEMENTS ENTERED INTO FROM TIME TO TIME, INCLUDING AMENDMENTS THERETO, BETWEEN THE DISTRICT COUNCIL AND ONE OR MORE OF THE FOLLOWING EMPLOYER ASSOCIATIONS OR THEIR SUCCESSORS ("ASSOCIATION AGREEMENT" OR "ASSOCIATION AGREEMENTS"): MASON CONTRACTORS ASSOCIATION OF GREATER CHICAGO, BUILDERS ASSOCIATION OF GREATER CHICAGO, FOX VALLEY MASON CONTRACTORS ASSOCIATION, LAKE COUNTY CONTRACTORS ASSOCIATION, SOUTH DUPAGE COUNTY MASON CONTRACTORS ASSOCIATION, AND FOX VALLEY GENERAL CONTRACTORS ASSOCIATION, EXCEPT TO THE EXTENT THOSE TERMS AND CONDITIONS ARE MODIFIED BY THIS MEMORANDUM OF UNDERSTANDING. UPON REQUEST, THE DISTRICT COUNCIL WILL PROVIDE THE EMPLOYER WITH A COPY OF THE THEN CURRENT ASSOCIATION AGREEMENT.

**3.** IF, AS OF THE DAY FOLLOWING EXPIRATION OF THE THEN EXISTING ASSOCIATION AGREEMENTS ("COMMENCEMENT DATE"), THERE ARE LOCATIONS AND WORK FOR WHICH AN ASSOCIATION AGREEMENT IS NOT IN EFFECT, THE TERMS AND CONDITIONS, OTHER THAN THOSE RELATING TO DURATION AND TERMINATION, OF THE ASSOCIATION AGREEMENT OR AGREEMENTS EXPIRING IMMEDIATELY PRIOR TO THE COMMENCEMENT DATE SHALL ESTABLISH THE TERMS AND CONDITIONS OF EMPLOYMENT FOR THE EMPLOYEES FOR A PERIOD OF SIXTY DAYS BEGINNING WITH THE COMMENCEMENT DATE, OR UNTIL A NEW ASSOCIATION AGREEMENT IS EFFECTIVE, WHICHEVER OCCURS FIRST, FOLLOWING WHICH THE TERMS AND CONDITIONS SET FORTH IN THE NEW ASSOCIATION AGREEMENT, IF ANY, SHALL BE IN FULL FORCE AND EFFECT. WITHIN 30 DAYS OF THE EXECUTION OF A NEW ASSOCIATION AGREEMENT OR AGREEMENTS COVERING LOCATIONS AND WORK WHICH WERE NOT COVERED BY AN ASSOCIATION AGREEMENT AS OF THE COMMENCEMENT DATE, THE EMPLOYER SHALL MAKE RETROACTIVE PAYMENTS TO AND ON BEHALF OF ALL EMPLOYEES FOR ALL INCREASED WAGES AND BENEFITS AS PROVIDED IN THE NEW ASSOCIATION AGREEMENT OR AGREEMENTS FOR WORK PERFORMED BETWEEN THE COMMENCEMENT DATE AND THE TIME THAT SUCH NEW ASSOCIATION AGREEMENT OR AGREEMENTS ARE EFFECTIVE. THE DISTRICT COUNCIL, AT ITS SOLE DISCRETION, AND AT ANY TIME, MAY TERMINATE THIS PARAGRAPH OF THIS MEMORANDUM OF UNDERSTANDING BY GIVING THE EMPLOYER WRITTEN NOTICE OF SUCH TERMINATION, AND THE EMPLOYER WAIVES ANY CLAIMS IT MIGHT AT ANY TIME HAVE AGAINST THE DISTRICT COUNCIL FOR SO TERMINATING THIS PARAGRAPH REGARDLESS OF WHETHER THE DISTRICT COUNCIL TAKES SUCH ACTION WITH RESPECT TO THE EMPLOYER ALONE OR WITH RESPECT TO ANY OR ALL OTHER EMPLOYERS.

**4.** THIS MEMORANDUM OF UNDERSTANDING SHALL REMAIN IN EFFECT AND SHALL BE GOVERNED BY ASSOCIATION AGREEMENTS ENTERED INTO IN THE FUTURE AND COVERING FUTURE TIME PERIODS UNLESS AND UNTIL IT HAS BEEN TERMINATED BY EITHER PARTY GIVING WRITTEN NOTICE OF TERMINATION TO THE OTHER NOT LESS THAN 60 AND NOT MORE THAN 90 DAYS PRIOR TO THE TERMINATION DATE OF THE THEN APPLICABLE ASSOCIATION AGREEMENT, IN WHICH EVENT THIS MEMORANDUM OF UNDERSTANDING SHALL TERMINATE ON THE ̣AST DAY OF THE THEN APPLICABLE ASSOCIATION AGREEMENT. IN THE EVENT NO SUCH TIMELY NOTICE IS GIVEN, THIS MEMORANDUM OF ̣NDERSTANDING SHALL REMAIN IN EFFECT UNTIL TERMINATED IN ACCORDANCE WITH ITS TERMS.

**Exhibit B**

**5.** THE EMPLOYER AGREES TO PAY THE AMOUNTS OF THE CONTRIBUTIONS WHICH IT IS BOUND TO PAY TO THE SEVERAL FRINGE BENEFIT FUNDS DESCRIBED IN THE ASSOCIATION AGREEMENTS AND AGREES TO AND IS HEREBY BOUND BY AND CONSIDERED TO BE A PARTY TO THE AGREEMENTS AND DECLARATIONS OF TRUST CREATING EACH OF THOSE TRUST FUNDS, TOGETHER WITH ANY RESTATEMENTS OR AMENDMENTS THERETO WHICH HAVE BEEN OR MAY BE ADOPTED, AS IF IT HAD BEEN A PARTY TO AND SIGNED THE ORIGINAL COPIES OF THE TRUST INSTRUMENTS. THE EMPLOYER RATIFIES AND CONFIRMS THE APPOINTMENT OF EACH OF THE EMPLOYER TRUSTEES, WHO SHALL, TOGETHER WITH THEIR SUCCESSOR TRUSTEES DESIGNATED IN THE MANNER PROVIDED IN THOSE AGREEMENTS AND DECLARATIONS OF TRUST, AND, WHERE APPLICABLE, JOINTLY WITH AN EQUAL NUMBER OF TRUSTEES REPRESENTING EMPLOYEES, CARRY OUT THE TERMS AND CONDITIONS OF THE TRUST INSTRUMENTS.

**6.** WITH RESPECT TO THE AMOUNT OF CONTRIBUTIONS PAYABLE UNDER ASSOCIATION AGREEMENTS TO THE INTERNATIONAL MASONRY INSTITUTE, ILLINOIS MASONRY INSTITUTE PROMOTION TRUST, MASONRY INDUSTRY ADVANCEMENT FUND, ANY OF THEIR SUCCESSORS, OR ANY INDUSTRY AND/OR PROMOTION FUND WHICH MAY AT ANY TIME BE IDENTIFIED IN ANY ASSOCIATION AGREEMENT ("INDUSTRY OR PROMOTION FUNDS"), THE DISTRICT COUNCIL, AT ITS SOLE DISCRETION, SHALL HAVE THE RIGHT AT ANY TIME, AND FROM TIME TO TIME, TO ALLOCATE AND REALLOCATE ALL OR ANY PART OF THE AMOUNT OF SUCH CONTRIBUTIONS TO OR AMONG WAGES, CONTRIBUTIONS TO ONE OR MORE SUCH INDUSTRY OR PROMOTION FUNDS, OR ANY COMBINATION THEREOF. ANY SUCH ALLOCATION OR REALLOCATION SHALL BE EFFECTIVE 30 DAYS AFTER THE DISTRICT COUNCIL MAILS WRITTEN NOTICE THEREOF TO THE EMPLOYER. THE PARTIES AGREE THAT, INASMUCH AS THE TOTAL AMOUNT OF WAGES AND FRINGE BENEFIT CONTRIBUTIONS WHICH THE EMPLOYER IS OBLIGATED TO PAY SHALL REMAIN UNCHANGED, ANY SUCH ALLOCATION OR REALLOCATION BETWEEN INDUSTRY OR PROMOTION FUND CONTRIBUTIONS AND WAGES, OR BETWEEN OR AMONG INDUSTRY OR PROMOTION FUNDS, SHALL NOT BE DEEMED TO RESULT IN A MORE FAVORABLE WAGE OR ECONOMIC FRINGE BENEFIT RATE FOR PURPOSES OF "MOST FAVORED NATION" PROVISIONS OF THIS MEMORANDUM OF UNDERSTANDING OR ASSOCIATION AGREEMENTS.

**7.** ANY MEMORANDUM OF UNDERSTANDING OR OTHER AGREEMENT PREVIOUSLY EXECUTED BY THE PARTIES IS SUPERSEDED BY THIS MEMORANDUM OF UNDERSTANDING.

DATED THIS _1st_ DAY OF _March_ , _2007_ .

COMPANY NAME: _KCS Construction Company_
(PRINT)

CONTRACT SIGNED BY: _Kenneth W. Littwin_

PLEASE PRINT NAME: _Kenneth W. Littwin_

TITLE: _Secretary_
(PRINT)

**ILLINOIS DISTRICT COUNCIL NO. 1 OF THE
INTERNATIONAL UNION OF BRICKLAYERS AND
ALLIED CRAFTWORKERS, AFL-CIO**

BY: _____

PRESIDENT OF ILLINOIS DISTRICT COUNCIL NO. 1

NOTE: NOT VALID UNLESS SIGNED BY THE
DISTRICT COUNCIL PRESIDENT

RECEIVED BY: _____
UNION REPRESENTATIVE

JOB LOCATION: _Local 74 office_

7/03

# JOINT AGREEMENT

### and

## WORKING RULES FOR ASSOCIATION
## AND INDEPENDENT CONTRACTORS

### between

## MASON CONTRACTORS ASSOCIATION
## OF GREATER CHICAGO

## BUILDERS ASSOCIATION

## GREAT LAKES CONTRACTORS ASSOCIATION

## FOX VALLEY ASSOCIATED GENERAL
## CONTRACTORS

### and

## ADMINISTRATIVE DISTRICT COUNCIL
## OF ILLINOIS

### of the

## INTERNATIONAL UNION OF BRICKLAYERS
## AND ALLIED CRAFTWORKERS,
## CONSISTING OF BRICKLAYERS LOCAL
## UNION Nos. 21, 56 and 74

### June 1, 2017 – May 31, 2020

**Exhibit C**

industry demands a mutuality of confidence between the Employers and the Unions. All will benefit by close cooperation in adjusting any differences by rational, common-sense methods.

THEREFORE, the parties agree as follows :

## ARTICLE I
## AREA COVERED BY THIS AGREEMENT

**1.1**

Except as otherwise stated, this Agreement shall cover the geographical area of Cook County, Lake County, Will County, Grundy County (with the sole exception of the DuPont Plant located on the western edge of Grundy County), DuPage County, Kendall County, DeKalb County, Kane County, and McHenry County, State of Illinois, and such additional territory which the Unions or the District Council shall subsequently acquire by approval of the International Union of Bricklayers and Allied Craftworkers.

**1.2**

Employers whose bargaining rights are held only by the Builders Association shall be bound by the Joint Agreement only with respect to work performed in Cook, Lake, and DuPage Counties, State of Illinois.

## ARTICLE II
## EFFECTIVE DATE AND DURATION

**2.1**

This Agreement shall be effective from June 1, 2017, through and including May 31, 2020.

## ARTICLE III
## UNION SECURITY AND CHECK-OFF

**3.1**

It shall be a condition of employment that all employees of each Employer covered by this Agreement who are members of the Union in good standing on the effective date of this Agreement shall remain members in good standing and those who are not members on the effective date of this Agreement shall, on the eighth day following the effective date of this Agreement, become and remain members in good standing in the Union. It shall also be a condition of employment that all employees covered by this

2

Agreement and hired on or after its effective date, shall, on the eighth day following the beginning of such employment become and remain members in good standing in the Union.

### 3.2 Union Membership Status

Employees who do not become members of the Union as required above, or whose membership is terminated by the Union by reason of the failure of the employee to tender or pay initiation fees and periodic dues uniformly required as a condition of acquiring or retaining membership, shall not be continued in the employ of any Employer under this Agreement.

### 3.3 Dues Check-Off

The Employer shall deduct from the wages of each employee who has signed a dues check-off authorization conforming to federal law, and transmit monthly to the Union (or to any agencies designated by the Union for the collection of such money) the sum for each hour paid which the Union has specified, or specifies from time to time and so advises the Employer in writing, as the portion of each employee's dues subject to check off, made payable to the Union, its International Union, or any other affiliate of its International Union, as designated from time to time by the Union. The sums transmitted for this purpose shall be accompanied by a statement, in a form specified by the Union, reporting the name of each employee whose dues are being paid and the number of hours each such employee has been paid.

### 3.4 LPC and BACPAC Check-Off

The Employer shall deduct from the wages of each employee who has signed a voluntary check-off authorization form for this purpose, and transmit monthly to the Bricklayers and Allied Craftworkers Administrative District Council 1 of Illinois Local Political Committee ("LPC"), or to any agency designated by the Union for the collection of such money, the sum for each hour paid which the Union has specified, or specifies from time to time and so advises the Employer in writing, as each employee's contribution to the LPC; and the Employer shall deduct from the wages of each employee who has signed a voluntary check-off authorization form for this purpose, and transmit monthly to the Bricklayers and Allied Craftworkers Political Action Committee ("BACPAC"), or to any agency designated by the Union for the collection of such money, the sum for each hour paid which the Union has specified, or specifies from time to time and so advises

3

Case: 1:18-cv-03519 Document #: 15-1 Filed: 09/28/18 Page 17 of 22 PageID #:54

the Employer in writing, as each employee's contribution to the BACPAC. The sums transmitted for either or both of these purposes shall be accompanied by statements, in the form specified by the Union, reporting the name of each employee whose LPC contributions, BACPAC contributions, or both, are being paid, and the number of hours each such employee has been paid.

### 3.5 Dues Check-Off Indemnification

The Union agrees to indemnify and save harmless the Employer against any and all claims, demands, suits, or other forms of liability that shall arise out of or by reason of the deduction and transmittal of dues pursuant to this Article III, provided, however, that the Union's total liability hereunder shall be limited to the amount of dues transmitted by the Employer to the Union pursuant to this Article during the time period covered by the claim.

### 3.6 LPC and BACPAC Indemnification

The Union agrees to indemnify and save harmless the Employer against any and all claims, demands, suits, or other forms of liability that shall arise out of or by reason of the deduction and transmittal of LPC contributions, BACPAC contributions, or both, pursuant to this Article III, provided, however, that if the Employer does not allow the Union to determine the manner in which the Employer will respond to or defend any such claim, demand, suit, or other assertion of liability, including but not limited to designating the Employer's legal counsel for the purposes of such response and defense, the Union's total liability regarding LPC contributions shall be limited to the amount of LPC contributions, and the Union's total liability regarding BACPAC contributions shall be limited to the amount of BACPAC contributions, in each case as to such contributions transmitted by the Employer to the Union pursuant to this Article during the time period covered by the claim.

### ARTICLE IV
### BARGAINING UNIT AND RECOGNITION

**4.1**

This Agreement shall apply to all work within the trade jurisdiction of the Union and performed by this craft. The bargaining unit shall consist of all bricklayers and allied craftworkers, stone masons, and apprentices engaged in such occupational and craft work and the Employers recognize the Union as the sole and exclusive representative for all bricklayers

4

and allied craftworkers, stone masons, and apprentices employed by the Employers for the purposes of collective bargaining in respect to rates of pay, wages, hours of employment, or other conditions of employment. Only the employees in the bargaining unit shall perform the work covered by this Agreement.

**4.2**

For the purposes of the Health and Welfare, Administrative District Council 1 Pension, and Annuity Fund contributions only, the bargaining unit shall also include those persons in the employ of an Employer who are supervisors, as defined in the Labor-Management Relations Act, as amended, and who at one time were employee members of the bargaining unit herein on whose behalf contributions were required to be made to the Health and Welfare and Pension and Annuity Funds, unless written notice to the contrary signed by the supervisor is furnished to each of the applicable trust funds within 30 days of the commencement of employment as supervisor.

### ARTICLE V
### WORK JURISDICTION

The following comprises the work jurisdiction of the Union:

### 5.1 Bricklaying Masonry

A. Bricklaying Masonry shall consist of the laying of bricks made from any material in, under, or upon any structure or form of work where bricks are used, whether in the ground, or over its surface, or beneath water; in commercial building, rolling mills, iron works, blast or smelter furnaces, stoves, lime or brick kilns; in mines or fortifications; and all underground work, such as sewers, telegraph, electric, and telephone conduits. All fireproofing, blockarching, terra cotta cutting and setting, the laying of all tile, mineral-wool, cork blocks, glass masonry, aerated autoclave concrete or other lightweight masonry units or products, or any substitute for such material; post tensioning of masonry or other products or materials described in this Article, installation and repair of lintels, door and window frame setting, setting of shelf angles, grouting, and all uses of metal lath related to masonry or other products or materials described in this Article; the laying of all pipe sewers or water mains and the filling of all joints on the same when such sewers or conduits are of any vitreous material, burnt clay, or cement, or any substitute

5

when the building is six stories or under. In buildings thirteen (13) stories in height or over, where elevator service is not maintained to carry bricklayers and masons to and from their work, consideration shall be given to bricklayers on higher stories and a reasonable time should be allowed them to and from the work. Where the tool house is located in the building, it shall not be above the third floor.

**6.13**

A ten minute break shall be given in the morning, commencing not earlier than two hours, nor later than three hours, after the start of the work day. For any job on which there is a ten (10) hour workday, there shall be an additional 10 minute break given after the eighth hour.

**6.14**

There shall be a 30 minute lunch period that will start at a time set by the Employer, which time will be no later than five hours after starting time. Employees shall be paid double-time if they work through lunch, providing the Union is notified of the employees having worked through lunch within two regular work days of that having occurred. Before filing a grievance, the Union shall notify the Employer of its claim.

**6.15**

A. Multiple-Shifts: A contractor may work more than one shift in a day, without Union permission. All hours worked on the shift during regular hours (meaning a shift that starts between 6:00 A.M. and 10:00 A.M.) are paid at the regular rate of pay, and all hours on the other shift or shifts are paid at the regular rate plus a 5% premium.

B. Special Hours/Permission: If a contractor requests permission from the Union to work a shift that involves "special hours" (meaning a starting time before 6:00 A.M. or after 10:00 A.M.), and the Union grants permission, all the work is paid at the regular rate.

C. Special Hours/No Permission: If a contractor either does not request Union permission for "special hours" work, or asks permission and the Union does not grant the request, all hours worked between 6:00 A.M. and 4:00 P.M. are paid at the regular rate and all other hours are paid at the regular rate plus a 5% premium. (As examples for this

subsection, if the shift starts at 12:00 noon and continues for eight hours of work, four hours are paid at the regular rate and four hours are paid at the regular rate plus the 5% premium; and if the shift starts at 5:00 P.M. and continues for eight hours of work, all hours are paid at the regular rate plus the 5% premium.)

D. The provisions of Article VI, Section 6.8 for time and one-half and double-time pay apply to any work under this Section 6.15.

## ARTICLE VII
## WAGES AND FRINGE BENEFIT FUND CONTRIBUTIONS

**7.1**

A. The payment for work performed effective as of June 1, 2017, is as follows:

| | |
|---|---|
| Wage Rate | $45.38 |
| Administrative District Council 1 Welfare Fund | $10.45 |
| Administrative District Council 1 Pension Fund | $9.60 |
| Bricklayers and Stone Masons of Illinois District Council No. 1, B.A.C. Annuity Trust Fund | $5.65 |
| International Pension Fund, including PPA | $1.43 |
| District Council Training Center Fund | $.40 |
| International Masonry Institute | $.74 |
| Labor-Management Cooperation Committee | $.15 |
| Market Recovery Labor-Management Cooperation Committee | $.18 |
| Illinois Masonry Institute Promotion Trust | $.19 |
| Masonry Industry Advancement Fund | $.10 |
| Chicagoland Construction Safety Council | $.01 |
| International Council of Employers of Bricklayers and Allied Craftworkers | $.01 |
| Construction Industry Service Corporation | $.01 |

B. Raises of $2.23 and $2.30 per hour will become effective as of June 1, 2018 and June 1, 2019 respectively. The Union shall allocate the increase among wages and existing fringe benefit funds. Any increase for Health and Welfare shall be in such amount as found necessary by actuarial study and

14

15

## 8.20 Reports to Union and Trustees

A. To assist in the collection of the contributions required pursuant to this Agreement, all Employers shall furnish the following reports to the Trustees of the Funds, or to the Union as indicated:

(1) All Employers shall annually furnish to the Trustees of the Funds, on dates determined by the respective Trustees, a statement showing whether (1) the Employer is a corporation and the names of all officers and directors of said Employer; (2) if not a corporation, a certificate stating who are the constituent persons composing the Employer and their respective interests in the Employer.

(2) Each Employer shall furnish to the Depository Account, on a monthly basis, a remittance report listing the names of all employees covered by this Agreement employed by the Employer during the month for which the remittance report is made. For months in which no such employees were employed, the remittance report of the Employer for that month shall so state. The reports required to be furnished pursuant to this section shall be received by the Bank on or before the twentieth (20th) day of each month.

(3) Each Employer shall furnish to the Union on a weekly basis a report listing the name and address of each job site where work covered by this Agreement was performed during the week for which the report is made and the name of the foreman employed on each job.

B. If any Employer fails to file the required reports provided for above, and such failure continues for seventy-two (72) hours after the Employer has received written notice thereof, the Union may stop any job of that Employer and/or withdraw the employees from such Employer's employment, and may publicize such stoppage or attempted stoppage of work, until all required reports have been provided, anything in this Agreement to the contrary notwithstanding.

C. Within 48 hours of starting any job or project that alone or in the aggregate has a contracted value of $50,000.00 or more, the Employer must notify the District Council by email or facsimile of the starting date and specific address and city of the job or project. The Union shall notify any Employer of an alleged violation of this provision in writing. The Employer will be liable for a penalty of $250.00 for each job or project if the matter is settled before it is presented to the Joint Arbitration Board, and for a penalty of $1,000.00 for each job or project if the case is presented to the Joint Arbitration Board and the Joint Arbitration Board finds a violation to have occurred, with the Joint Arbitration Board to determine the recipient of all fines.

## 8.21 Joint Trusteeship of Local Industry Promotion Fund

A. The Union desires that the Illinois Masonry Institute Promotion Trust Fund (the "Local Promotion Trust") be jointly trusteed, with an equal number of Trustees representing Employers and employees, and they contend that such joint trusteeship is lawful under Section 302(c) of the Taft-Hartley Act. The Employers are agreeable to such joint trusteeship, subject to certain limitations, but they contend that Section 302(c) prohibits employee representatives serving as Trustees on the Local Promotion Trust. Therefore, the parties agree that a jointly administered successor trust to the Local Promotion Trust shall be created, subject to the following limitations, and contributions required to be paid under this contract to the Local Promotion Trust shall be payable to the successor fund:

(1) The joint trusteeship of industry promotion or advancement funds shall be determined to be lawful by a final judgment issued by any federal court.

(2) The joint Boards of Trustees shall consist of five employer and five employee representatives, each of whom shall have an equal vote.

(3) In the event that less than five Trustees on a side shall be in attendance at a meeting, the votes of each Trustee present on that side shall be increased proportionally, so that all of the Trustees on a side who are present at a meeting shall be entitled to collectively cast a total of five votes.

(4) Seven affirmative votes shall be required to adopt a resolution of the Board of Trustees. The successor trust funds shall not be used for the purpose of providing apprenticeship training.

B. If such a jointly administered successor local industry promotion fund is not implemented within 30 days after the issuance of a final federal court judgment as described above, then contributions pursuant to this contract to the Local Promotion Trust shall cease 30 days after notice of such termination is given by the Union to the Associations.

24

25

## ARTICLE IX
## JURISDICTIONAL DISPUTES

**9.1**

All questions of jurisdiction over work to be performed within Cook County under this Agreement shall be resolved through the procedures of the Chicago Joint Conference Board as provided in the Standard Agreement between the Construction Employers' Association and the Cook County Building and Construction Trades Council. All questions of jurisdiction over work to be performed outside of Cook County under this Agreement shall be resolved by a Joint Arbitration Board as described in Section 10.3 of this Agreement or, if the Joint Arbitration Board does not render a decision, the dispute may be referred to arbitration as described in Sections 10.4 through 10.7 of this Agreement.

## ARTICLE X
## SETTLEMENT OF DISPUTES

**10.1**

Any dispute between an Employer and the Union that they cannot resolve shall be referred to the Joint Arbitration Board (the "JAB"). All grievances must be filed within ninety (90) days of the date of the occurrence giving rise to the grievance or of when the party reasonably should have known of the existence of the grievance. In deciding any questions of timeliness of a grievance, the JAB should give special consideration to claims of concealment or fraud, along with any other factors it considers appropriate. Grievances not raised within the ninety (90) days period shall be deemed waived and not subject to being processed under this procedure.

**10.2**

Any of the Benefit Funds identified in Article VIII, or any group of those Benefit Funds, acting through appropriate representatives, may inform an Employer of a dispute over that Employer's compliance with obligations to the Benefit Fund or Funds pursuant to this Agreement and may refer such matter to the JAB for resolution. Any such matter referred to the JAB shall be subject to all provisions of this Article X, and in such cases the words "Benefit Fund or Funds" shall replace the word "Union" in Article X, Section 10.7 as applicable. No Benefit Fund or Funds are required to utilize this procedure for resolving such disputes; and each Benefit Fund shall retain all rights it would otherwise have to

26

use other means to resolve disputes with, or pursue claims against, Employers instead of or in addition to the procedures provided here. This provision will cease to be effective as of May 31, 2020, unless the parties agree otherwise.

**10.3**

There shall be a JAB consisting of four (4) appointees from the District Council and four (4) appointees from the Associations. Any contractor that sits on the JAB as a management appointee must be a mason contractor that is a contributor to the various funds and must be signatory to a collective bargaining agreement with the District Council. Any Union appointee must also be a member of one of the District Council's locals. An attorney, who may be appointed by management or labor, may also sit on the JAB as an appointee of management or the Union. The Association appointees shall be designated by the Northern Illinois Mason Employers Council. A quorum of the JAB shall be two (2) appointees from the District Council and two (2) appointees from the Associations, but neither side shall cast more total ballots than the other. A decision shall require a majority vote and any such decision shall be binding on both parties.

**10.4**

If a dispute has been referred to the JAB and is either refused by the JAB or results in a tie vote by the JAB, either party may submit the dispute to binding arbitration by:

A.    Informing the other party of such submission and requesting the American Arbitration Association (the "AAA") to submit a panel of nine (9) arbitrators, who are members of the National Academy of Arbitrators and who maintain an office in the greater Chicagoland area, available to hear and decide the issue. The party requesting such panel shall upon receipt of the nine (9) names, strike one (1) name from the list and submit the remaining eight (8) names to the other party, who shall strike one (1) additional name. The parties shall alternately strike names thereafter until one remains, who shall be the arbitrator.

B.    The party requesting arbitration shall then assume the responsibility of procuring the services of the arbitrator in accordance with the procedures of the AAA. The arbitrator shall hear and decide the issue as soon as possible, and shall submit his Award in the case.

27

**10.5**

If no agreement on the selection of an arbitrator is reached within one (1) week after a panel is tendered by the AAA, the AAA shall designate an arbitrator.

**10.6**

Unless otherwise agreed to by the parties to the dispute, the arbitrator shall issue a ruling without written opinion within 48 hours after the dispute is submitted, and the arbitrator's decision and award in the case shall be final and binding upon the parties.

**10.7**

Except as modified by the foregoing time limitations, the arbitration shall be conducted pursuant to the AAA's Voluntary Labor Arbitration Rules, as amended. All expenses of the arbitration, except expenses of legal counsel, shall be borne equally by the contractor and Union which are parties to the dispute.

**10.8**

When any matter is in dispute and has been referred for resolution under the provisions of this Article, the provisions and conditions prevailing prior to the time such matter arose shall not be changed or abrogated. The JAB, or any arbitrator selected in accord with this Article, shall have full power to enforce this Agreement and may impose such awards, orders, damages, lost wage damages, fines, sanctions, and other remedies as the JAB or arbitrator deem appropriate. If an Employer fails to comply with an award by the JAB or an arbitrator within two weeks of receipt of such award, the Union may, at its sole discretion, stop any job of that Employer, and may publicize such stoppage or attempted stoppage of work, anything to the contrary in this Agreement notwithstanding.

## ARTICLE XI
### NO STRIKE/NO LOCKOUT

**11.1**

During the life of this Agreement, no party will order, maintain, sanction, or engage in any strike, lockout, stoppage of work, or boycott affecting any other party, except as is specifically provided for in this Agreement.

28

## ARTICLE XII
### SUBLETTING

**12.1**

It shall be the duty of all persons letting or subletting bricklaying or masonry contracts to ascertain that the contractor or subcontractor is reliable, financially responsible, and will comply with the provisions of this Agreement. All persons letting or subletting masonry shall assume the responsibility for all wages owed to employees for work covered by the Agreement and for all payments or contributions to the Funds if its contractor or subcontractor fails to pay all such wages or make all such payments or contributions; provided, however, that the Union notifies the person letting or subletting masonry work, in writing, of any such delinquency within 90 days of the delinquency and provided also that to help assist the Union, the person letting or subletting masonry shall notify the Union of the contractor or subcontractor to whom the work was sublet and the name and location of the project.

**12.2**

Subcontractors shall not sublet any part of the bricklaying, masonry work, or work of the allied crafts, except the stone work, the hollow tile floor arches, the caulking and cleaning and pointing; provided, however, the caulking shall be sublet before the exterior walls are completed and to subcontractors who employ bricklayers for such work.

## ARTICLE XIII
### EMPLOYEES, EMPLOYERS, ASSOCIATIONS, AND UNIONS

**13.1 Local Employment**

For all work performed within the geographic jurisdiction of the District Council, at least 50% of the employees shall reside within the geographic jurisdiction of the District Council.

**13.2 Bricklayer Qualifications**

Bargaining unit employees covered by this Agreement can be required to work on the job only with qualified employees. All apprentices successfully completing the apprenticeship program shall be considered qualified. All other persons seeking employment under this Agreement shall be required to pass an examination to

29

9/22/2018   Case: 1:18-cv-03519 Document #: 15-1 Filed: 09/28/18 Page 22 of 22 PageID #:59



## CORPORATION FILE DETAIL REPORT

| File Number | 61087915 | | |
|---|---|---|---|
| Entity Name | LCS CONSTRUCTION CO. | | |
| Status | DISSOLVED | | |
| Entity Type | CORPORATION | Type of Corp | DOMESTIC BCA |
| Incorporation Date (Domestic) | 05/23/2000 | State | ILLINOIS |
| Agent Name | KENNETH W LITTWIN JR | Agent Change Date | 04/20/2010 |
| Agent Street Address | 1090 INDUSTRIAL DRIVE #5 | President Name & Address | KEN LITTWIN JR., 1061 WAVELANDAVE, FRANKLIN PARK, IL 60131 |
| Agent City | BENSENVILLE | Secretary Name & Address | INVOLUNTARY DISSOLUTION 10 13 17 |
| Agent Zip | 60106 | Duration Date | PERPETUAL |
| Annual Report Filing Date | 00/00/0000 | For Year | 2017 |

Return to the Search Screen

BACK TO CYBERDRIVEILLINOIS.COM HOME PAGE

**Exhibit D**



*International Union*

*Bricklayers AND Allied Craftworkers*

**HEADQUARTERS**
680 N. INDUSTRIAL DRIVE
ELMHURST, ILLINOIS 60126

PHONE: 630•941•2300
FAX: 630•941•2301

**ADMINISTRATIVE DISTRICT COUNCIL 1 OF ILLINOIS**

**PRESIDENT**
JAMES ALLEN

**SECRETARY - TREASURER**
MICHAEL LOWERY

June 5, 2017

## VIA CERTIFIED & REGULAR MAIL

LCS Construction, Co.
1061 Waveland Avenue
Franklin Park, IL 6013

Mr. Kenneth Littwin, Jr.
C/O LCS Construction, Co.
11061 Waveland Avenue
Franklin Park, IL 60131

Dear Sir or Madam:

The union claims you violated the collective bargaining agreement to which you are a party, including but not necessarily limited to Article III (Union Security), Article IV (Bargaining Unit and Recognition), Article VI (Work Week and Payment of Wages), Article VII (Wages and Fringe Benefit Fund Contributions), Article VIII (Benefit Funds), and 8.17, C, Job Reporting, Article XXIV (Bonds), Article XV (Foremen) and Article XVI (Stewards.) These claims could result in orders for payment of wages and benefit fund contributions, lost wage damages, lost fringe benefit fund contribution damages, lost dues and initiation fee damages, other monetary relief, an audit order, and/or other relief.

Article X of the Collective Bargaining Agreement provides for resolution of disputes by a Joint Arbitration Board. The Joint Arbitration Board will meet, **Wednesday, June 21, 2017, at 8:00 A.M., at the Administrative District Council office, located at 660 N. Industrial Drive, Elmhurst, Illinois 60126,** to consider the union's grievance. We urge you to attend the hearing, and be prepared to present your position and respond to the claims and evidence against you.

In addition, the Union claims that based on the manner of operating the business and the relationship to the business, Kenneth Littwin, Jr. is bound to the collective bargaining agreement between LCS Construction Co., and Administrative District Council 1, and is personally responsible for the obligations under that contract.

If you have any questions, please call Ms. Christine M. Connolly at the Administrative District Council office. If you want to try to resolve this grievance without the need for a hearing, please call Mr. Mike Alore at (630) 743-3131.

Very truly yours,

James Allen
President

JA/cmb
Enclosure

**Exhibit E**

## EXPLANATION OF PROCEDURES
## BEFORE JOINT ARBITRATION BOARD

This notice will explain the procedures followed by the joint arbitration board ("JAB") that exists under the contract between Administrative District Council 1 of Illinois of the International Union of Bricklayers and Allied Craftworkers and the Employer Associations that are parties to the Joint Agreement and Working Rules.

1.  The JAB is designed to provide a quick and inexpensive way to resolve disputes. The parties to the contract believe it is a much better way to settle problems than having strikes, lockouts, lawsuits, or presentation of all cases to private arbitrators.

2.  Under the terms of the contract, half the JAB members are appointed by the Union and half by the Associations. Regardless of who appoints them, the arbitrators are required to resolve each case fairly and based on their best determination of the facts and interpretation of the contract. There are usually four arbitrators, two appointed by the Union and two by the Associations, but sometimes there can be a different number of arbitrators.

3.  Parties are normally notified of the existence of the claim or grievance and the scheduling of a hearing date through a letter from the District Council. Any requests for extensions should be directed to the JAB secretary, who works for the District Council and may be contacted there. The JAB will decide whether a postponement will be granted.

4.  The JAB cannot force you to attend the hearing, but one party to the contract cannot prevent another party from pursuing its claim by failing to attend. If you do not attend and do not request and receive a postponement, it is likely the hearing will go forward without you and the case will be decided on the information presented.

5.  The JAB does not require parties to disclose their evidence or provide extensive details about the cases before the hearing.

6.  Parties can be represented at the hearing by anybody they want.

7.  A moderator will be present at the hearing. He is not a member of the panel and does not vote on the decision. He introduces everybody, maintains order, and makes sure everybody has a chance to examine any documents, ask whatever questions they want, present their evidence and arguments, and say whatever they wish. The secretary for the JAB is also present to help with the paperwork and administrative tasks.

Page 1 of 2

P 28(a)(1)-000007

Exhibit F

8. The JAB does not have a court reporter present. Any party that wants to have a transcript may bring a certified reporter at its own expense but if it does so, it must provide copies of the transcript to the other party and to the JAB, also at its own expense. Tape recordings are not permitted.

9. Formal rules of evidence do not apply to JAB proceedings. Subject to any limits the arbitrators may set, the parties can present anything they want and it will be up to the arbitrators to decide how much weight to give to whatever is presented.

10. The normal procedure is that the parties are called into the hearing room and the moderator introduces everybody and states who brought the claim. That party then presents its facts and arguments. The other party has an opportunity to respond, and may present whatever facts and arguments it wishes. The parties will have a chance to question each other, and the arbitrators may ask questions. Parties presenting written material are asked to bring copies for the panel members and the other side. When everybody has completed their presentations, the moderator will ask everybody but the arbitrators to leave the room, and the arbitrators will then begin their deliberations.

11. After the arbitrators have completed their deliberations, the parties are called back into the hearing room and usually one of the arbitrators announces the award, and explains a written decision will be issued later. There is no set time for the arbitrators to complete the written decision, but it usually takes between four and six weeks. Once the arbitrators are satisfied with the written decision and have all signed it, copies are sent to the parties.

12. Unless the written decision says otherwise, it is final. Any party may ask to have the case reopened by contacting the JAB secretary in writing. She will then put the case on the agenda for the next available session and the arbitrators at that session will decide whether to hear any additional evidence or arguments, reopen the case, or change the decision. The written decision remains final unless the arbitrators vote to reopen the case and then decide to change the earlier decision. A party is not relieved of its obligation to comply with the decision that was issued just because it asks for a case to be reopened.

13. Any communications any parties want to have with the arbitrators should be submitted in writing to the JAB secretary, who will forward it to the arbitrators.

Page 2 of 2

IN ACCORDANCE WITH ARTICLE X OF THE COLLECTIVE BARGAINING AGREEMENT AND WORKING RULES BETWEEN THE ADMINISTRATIVE DISTRICT COUNCIL 1 OF ILLINOIS OF THE I.U.B.A.C. AND THE SIGNATORY CONTRACTORS, A HEARING WAS HELD ON JUNE 21, 2017 AT THE ADMINISTRATIVE DISTRICT COUNCIL 1 OFFICE, 660 N. INDUSTRIAL DRIVE, ELMHURST, ILLINOIS 60126 TO RESOLVE A DISPUTE THAT CONCERNED CLAIMS OF VIOLATIONS OF **ARTICLE III, ARTICLE IV, ARTICLE VI, ARTICLE VII, ARTICLE VIII, ARTICLE XV, ARTICLE XVI AND ARTICLE XXIV** OF THE AGREEMENT, ALONG WITH A CLAIM CONCERNING PERSONAL RESPONSIBILITY UNDER THE AGREEMENT. RICHARD H. LAUBER AND GARY PORTER WERE THE CONTRACTOR APPOINTEES PRESENT AND MICHAEL ERDENBERGER AND ROBERT FITAL WERE THE UNION APPOINTEES PRESENT. THE CONTRACTOR WAS NOTIFIED OF THE SCHEDULED HEARING BY LETTER ON JUNE 5, 2017 AND HAND DELIVERY JUNE 14, 2017.

REPRESENTATIVE PRESENT FOR ADC 1: BARRY BENNETT

REPRESENTATIVE PRESENT FOR ADC 1 BENEFIT FUNDS: DOUG JOHNSTON

REPRESENTATIVES PRESENT FOR LMCC: MICHAEL ALORE

REPRESENTATIVE PRESENT FOR LCS CONSTRUCTION CO. AND MR. KEN LITTWIN, JR.: NONE

LCS CONSTRUCTION CO. HAS A CURRENT COLLECTIVE BARGAINING AGREEMENT, WHICH WAS SIGNED ON MARCH 1, 2007 BY KEN LITTWIN, JR.

AFTER HEARING THE CHARGES, ARGUMENTS, TESTIMONY, AND EVIDENCE BY DOUG JOHNSTON, MIKE ALORE AND BARRY BENNETT, LISTENING TO THEIR RESPONSES TO QUESTIONS FROM THE JOINT ARBITRATION BOARD MEMBERS, AND EXAMINING THE DOCUMENTS PRESENTED, THE JOINT ARBITRATION BOARD RENDERED ITS DECISION ON THE CHARGES OF VIOLATIONS OF **ARTICLE III, ARTICLE IV, ARTICLE VI, ARTICLE VII, ARTICLE VIII, ARTICLE XV, ARTICLE XVI AND ARTICLE XXIV** OF THE COLLECTIVE BARGAINING AGREEMENT, AND ON THE CLAIM THAT MR. KEN LITTWIN, JR. PERSONALLY, IS BOUND TO THE COLLECTIVE BARGAINING AGREEMENT SIGNED ON BEHALF OF LCS CONSTRUCTION COMPANY, AND IS LIABLE FOR THE OBLIGATIONS UNDER IT.

BASED ON THE EVIDENCE ABOUT THE RELATIONSHIP BETWEEN MR. KEN LITTWIN, JR., AND LCS CONSTRUCTION CO., HIS MANNER OF OPERATING THE BUSINESS, AND HIS FAILURE TO ASSURE THAT THE BUSINESS SATISFIES ITS OBLIGATIONS, THE JOINT ARBITRATION FINDS THAT MR. KEN LITTWIN JR., IS PERSONALLY BOUND TO THE CONTRACT LCS CONSTRUCTION CO. SIGNED WITH ADMINISTRATIVE DISTRICT COUNCIL 1, AND IS PERSONALLY RESPONSIBLE FOR ALL OBLIGATIONS UNDER THAT CONTRACT, INCLUDING THOSE OBLIGATIONS BEING IMPOSED IN THIS DECISION. BASED ON THAT, ALL OBLIGATIONS IMPOSED UNDER THIS AWARD ARE THE RESPONSIBILITY OF LCS CONSTRUCTION CO., AND MR. KEN LITTWIN, JR., PERSONALLY. WE WILL REFER TO THAT BUSINESS AND THAT INDIVIDUAL TOGETHER THROUGH THE REST OF THIS AWARD AS "THE CONTRACTOR."

BASED ON THE EVIDENCE AND INFORMATION PRESENTED, THE JOINT ARBITRATION BOARD NOW RENDERS ITS DECISION ON THE CHARGES THAT THE CONTRACTOR VIOLATED THE COLLECTIVE BARGAINING AGREEMENT, AND ORDERS THE REMEDY WE BELIEVE TO BE PROPER FOR THE VIOLATIONS WE FIND WERE COMMITTED.

Exhibit G

LCS CONSTRUCTION CO.
MR. KEN LITTWIN, JR., PERSONALLY
PAGE TWO

THE JOINT ARBITRATION BOARD FINDS THAT THE CONTRACTOR VIOLATED ARTICLE III, ARTICLE IV, ARTICLE VI, ARTICLE VII, AND ARTICLE VIII OF THE AGREEMENT.

THE JOINT ARBITRATION BOARD FINDS THE CONTRACTOR COMMITTED THESE VIOLATIONS ON FOUR SEPARATE JOBS, NONE OF WHICH IT REPORTED. ACCORDINGLY, THE JOINT ARBITRATION BOARD IMPOSES A DAMAGE AWARD OF $2,000.00 ON THE CONTRACTOR, PAYABLE TO ADMINISTRATIVE DISTRICT COUNCIL 1, FOR THE FOUR JOB REPORTING VIOLATIONS.

THE JOINT ARBITRATION BOARD FINDS THE CONTRACTOR AVOIDED ITS OBLIGATIONS BY IGNORING THE CONTRACT WHEN PERFORMING 2105 HOURS OF BARGAINING UNIT WORK. THE JOINT ARBITRATION BOARD FINDS THE CONTRACTOR EITHER IMPROPERLY SUBCONTRACTED THAT WORK, USED INELIGIBLE EMPLOYEES TO PERFORM IT, PERFORMED THAT WORK IN SOME OTHER WAY IN TOTAL DISREGARD OF THE CONTRACT, OR USED A COMBINATION OF THOSE METHODS TO AVOID THE CONTRACT IN PERFORMING THAT WORK.

THE JOINT ARBITRATION BOARD ORDERS THE CONTRACTOR TO MAKE DAMAGE PAYMENTS TO THE HEALTH AND WELFARE, PENSION, ANNUITY AND DCTC FUNDS EQUAL TO WHAT WOULD HAVE BEEN THE CONTRIBUTIONS FOR ALL SUCH HOURS IF THERE HAD BEEN PROPER COMPLIANCE, AND TO MAKE A SEPARATE DAMAGE PAYMENT TO ADMINISTRATIVE DISTRICT COUNCIL 1 EQUAL TO THE CHECK-OFF DUES WHICH WOULD HAVE BEEN PAID IF THERE HAD BEEN PROPER COMPLIANCE WITH THE TERMS OF THE CONTRACT. THESE DAMAGE PAYMENT AND ALL OTHER DAMAGE PAYMENTS WILL BE BASED ON THE RATES IN EFFECT DURING THE TIME THE WORK IN QUESTION WAS PERFORMED, WHICH THE JOINT ARBITRATION BOARD FINDS WAS DURING THE PERIOD COVERED BY THE JUNE 1, 2016 THROUGH MAY 31, 2017 CONTRACT.

IN ADDITION, THE JOINT ARBITRATION BOARD IS ASSESSING DAMAGES AGAINST THE CONTRACTOR FOR WAGES WHICH WERE NOT PAID TO MEMBERS OF THE BARGAINING UNIT BECAUSE OF THE VIOLATIONS OF THE CONTRACT. BY EMPLOYING INDIVIDUALS WHO WERE NOT ENTITLED TO PERFORM BARGAINING UNIT WORK UNDER THE CONTRACT, THE CONTRACTOR DEPRIVED WORKERS WHO WERE ENTITLED TO PERFORM SUCH WORK OF THE OPPORTUNITY TO DO IT AND TO EARN WAGES AND BENEFITS. ALSO, WE THINK IT IS MORE LIKELY THAN NOT THAT THE CONTRACTOR PAID THE WORKERS WHO ACTUALLY PERFORMED THE WORK LESS THAN THE CONTRACTUAL WAGE RATE. AS A REMEDY FOR THIS PART OF THE VIOLATION, WE ORDER THE CONTRACTOR TO PAY DAMAGES EQUAL TO THE TOTAL NUMBER OF HOURS OF WORK PERFORMED IN DISREGARD OF THE CONTRACT MULTIPLIED BY THE HOURLY WAGE RATE.

BECAUSE IT IS IMPOSSIBLE TO IDENTIFY THE INDIVIDUAL WORKERS WHO WOULD HAVE RECEIVED THE WORK OPPORTUNITIES AND EARNED THE WAGES IF THE CONTRACTOR HAD NOT COMMITTED THESE VIOLATIONS, WE ORDER THAT THIS PORTION OF THE DAMAGES BE DIVIDED, ONE PART GOING TO ADMINISTRATIVE DISTRICT COUNCIL 1 AND ONE PART BEING DIVIDED BETWEEN THE HEALTH AND WELFARE, PENSION, ANNUITY, AND DCTC FUNDS, IN PROPORTION TO EACH OF THOSE FUNDS' CONTRIBUTION RATES. WE BELIEVE ORDERING THESE PAYMENTS TO BE MADE TO THESE BENEFIT FUNDS AND THE ADMINISTRATIVE DISTRICT COUNCIL WILL BEST SERVE THE INTERESTS OF THE WORKERS WHO WERE IMPROPERLY DEPRIVED OF WORK OPPORTUNITIES BY THE CONTRACTOR'S IMPROPER ACTIONS.

LCS CONSTRUCTION CO.
MR. KEN LITTWIN, JR., PERSONALLY
PAGE THREE

THE EXACT DIVISION OF THESE LOST WAGE DAMAGES WILL BE MADE IN SUCH A WAY AS TO PROVIDE THAT THE TOTAL OWED TO THE FOUR BENEFIT FUNDS AND TO ADMINISTRATIVE DISTRICT COUNCIL 1, AFTER TAKING INTO ACCOUNT AMOUNTS OWED TO THE FUNDS FOR LOST CONTRIBUTION EQUIVALENT DAMAGES AND TO ADMINISTRATIVE DISTRICT COUNCIL 1 FOR LOST HOURLY DUES EQUIVALENT DAMAGES, WILL BE THE SAME.

THE JOINT ARBITRATION BOARD ORDERS THE CONTRACTOR TO PAY DAMAGES TO THE DESIGNATED FRINGE BENEFIT FUNDS AND TO ADMINISTRATIVE DISTRICT COUNCIL 1 AS FOLLOWS:

## LOST CONTRIBUTION EQUIVALENT DAMAGES TO FRINGE BENEFIT FUNDS:

|  | RATE | HOURS | TOTAL |
|---|---|---|---|
| DISTRICT COUNCIL WELFARE FUND | $10.25 | 2105 | $ 21,576.25 |
| DISTRICT COUNCIL PENSION FUND | $ 8.95 | 2105 | $ 18,839.75 |
| ANNUITY | $ 5.00 | 2105 | $ 10,525.00 |
| DCTC | $ .35 | 2105 | $ 736.75 |
| **LOST HOURLY DUES EQUIVALENT DAMAGES:** | $ 2.34 | 2105 | $ 4,925.70 |
| **LOST WAGE DAMAGES:** | $44.88 | 2105 | $ 94,472.40 |

| | |
|---|---|
| TOTAL LOST WAGE DAMAGES TO HEALTH AND WELFARE, PENSION, ANNUITY AND DCTC FUNDS: | $ 23,860.17 |
| LOST WAGE DAMAGES TO ADMINISTRATIVE DISTRICT COUNCIL 1: | $ 70,612.23 |

## JOB REPORTING FINE, 4 AT $500.00:

| | |
|---|---|
| | $ 2,000.00 |

## SUMMARY OF DAMAGES:

| | |
|---|---|
| ADMINISTRATIVE DISTRICT COUNCIL 1 WELFARE FUND: | $ 31,537.08 |
| ADMINISTRATIVE DISTRICT COUNCIL 1 PENSION FUND: | $ 27,541.13 |
| ANNUITY FUND: | $ 15,387.07 |
| DCTC FUND: | $ 1,072.64 |
| ADMINISTRATIVE DISTRICT COUNCIL 1: | $ 77,537.93 |
| **TOTAL:** | **$153,075.85** |

LCS CONSTRUCTION CO.
MR. KEN LITTWIN, JR., PERSONALLY
PAGE FOUR

THE JOINT ARBITRATION BOARD ALSO ORDERS THE CONTRACTOR TO REPORT ALL JOBS, REGARDLESS OF THE DOLLAR VALUE, AT LEAST 48 HOURS BEFORE STARTING WORK, AND ORDERS THE CONTRACTOR TO PROVIDE A REPORT IN WRITING TO THE UNION, TO BE RECEIVED BY FAX, EMAIL, OR DELIVERY SERVICE NO LATER THAN 10:00 AM ON MONDAY OF EACH WEEK, LISTING ALL LOCATIONS WHERE THE CONTRACTOR WORKED THE PREVIOUS WEEK AND THE NUMBER OF EMPLOYEES WHO WORKED AT EACH OF THOSE LOCATIONS, AND LISTING ALL LOCATIONS THE CONTRACTOR EXPECTS TO WORK DURING THE COMING WEEK. IN ADDITION, THE CONTRACTOR MUST ALLOW ADMINISTRATIVE DISTRICT COUNCIL 1 TO PLACE A STEWARD OF ITS OWN CHOOSING ON EACH JOB AND MUST PROVIDE EACH SUCH STEWARD WITH THE OPPORTUNITY TO WORK WHENEVER ANY BARGAINING UNIT WORK IS BEING PERFORMED ON THE PARTICULAR JOB.

THE JOINT ARBITRATION BOARD ALSO ORDERS THE CONTRACTOR TO KEEP ITS $60,000.00 BOND IN PLACE.

IF THE UNION OR THE FUNDS OBTAIN EVIDENCE OF ADDITIONAL WORK PERFORMED IN VIOLATION OF THE COLLECTIVE BARGAINING AGREEMENT, THEY MAY FILE A NEW GRIEVANCE.

IF THE CONTRACTOR FAILS TO ABIDE BY ALL TERMS OF THIS AWARD, IT MUST REIMBURSE THE UNION AND/OR THE BENEFIT FUNDS FOR ALL COSTS AND LEGAL FEES INCURRED IN SEEKING OR OBTAINING COMPLIANCE, BEGINNING WITH THE DATE THIS AWARD IS MAILED TO IT. THE CONTRACTOR IS ALSO ORDERED TO PAY INTEREST ON ALL AMOUNTS OWED AT THE RATE OF 10% A YEAR FROM THE DATE OF THE HEARING, JUNE 21, 2017, TO THE DATE OF PAYMENT, UNLESS IT MAKES ALL PAYMENTS REQUIRED BY THE AWARD WITHIN TWO WEEKS OF WHEN THIS AWARD IS MAILED TO IT.


RICHARD H. LAUBER

MICHAEL ERDENBERGER

GARY PORTER

ROBERT FITAL

### AFFIDAVIT OF SERVICE

| Case: | Court: | County:<br>Cook | Job:<br>1948438 |
|---|---|---|---|
| Plaintiff / Petitioner:<br>International Union of Bricklayers and Allied Craftworkers | | Defendant / Respondent:<br>Kenneth Littwin | |
| Received by:<br>Advantage Processing | | For:<br>Brick Layers and Allied Crafters | |
| To be served upon:<br>Kenneth W. Littwin Jr. | | | |

I, James Elenz, being duly sworn, depose and say: I am over the age of 18 years and not a party to this action, and that within the boundaries of the state where service was effected, I was authorized by law to make service of the documents and informed said person of the contents herein

Recipient Name / Address:  Kenneth W. Littwin Jr., Home: 3804 Wilke Rd, Rolling Meadows, IL 60008

Manner of Service:  Personal/Individual, Jan 17, 2018, 4:25 pm CST

Documents:  Joint Arbitration Board Decision

Additional Comments:
1) Successful Attempt: Jan 17, 2018, 4:25 pm CST at Home: 3804 Wilke Rd, Rolling Meadows, IL 60008 received by Kenneth W. Littwin Jr.. Age: 32-35; Ethnicity: Caucasian; Gender: Male; Weight: 165; Height: 6'1"; Hair: Blond;
Male white subject pulled into the driveway in a Black Chevy pick-up with IL registration 2045678. I approached the driver and asked him if his name is Kenneth Littwin Jr. and he replied "Yes". I then served Kenneth with the provided documents regarding the joint arbitration and board decision. Photos of Kenneth taken at the time of service.

_James Elenz_   01-17-18

James Elenz  (IL Agency #117-001775)    Date

Advantage Processing
126 E. Wing St 308
Arlington Hts, IL 60004
847-917-9578

Subscribed and sworn to before me by the affiant who is
personally known to me.

Notary Public

01-17-18    09-6-2021

Date    Commission Expires

JACQUELINE ELENZ
OFFICIAL SEAL
Notary Public, State of Illinois
My Commission Expires
September 06, 2021

**Exhibit H**



## International Union







**HEADQUARTERS**
660 N. INDUSTRIAL DRIVE
ELMHURST, ILLINOIS 60126

ADMINISTRATIVE DISTRICT COUNCIL 1 OF ILLINOIS

**PRESIDENT**
JAMES ALLEN

PHONE: 630•941•2300
FAX: 630•941•2301

**SECRETARY · TREASURER**
MICHAEL LOWERY

November 20, 2018

## **VIA CERTIFIED & REGULAR MAIL**

| | |
|---|---|
| Mr. Ken Littwin, Sr. | Local Contracting Services Construction Co. |
| Mr. Ken Littwin, Jr. | C/O Mr. Ralph F. Tellefsen, III |
| Local Contracting Services Construction Co. | Registered Agent |
| LCS Construction Co. | 172 S. Berkley |
| 1061 Waveland Avenue | Elmhurst, IL 60126 |
| Franklin Park, IL 60131 | |

Mr. Ken Littwin, Sr.
Local Contracting Services Construction Co.
Mr. Ken Littwin, Jr.
LCS Construction, Inc.
3804 Wilkie Rd.
Rolling Medows, IL. 60008

Dear Contractor:

The Union claims that Local Contracting Services Construction Co., and Mr. Ken Littwin, Sr. personally are bound to the Collective Bargaining Agreement with Administrative District Council No. 1 to which LCS Construction Co. is a party and to which Mr. Ken Littwin, Jr. has been found to be personally bound. We are providing notice of this grievance and of the scheduled hearing to LCS Construction Co. and Mr. Ken Littwin, Jr. along with Local Contracting Services Construction Co., and Mr. Ken Littwin, Sr. because this grievance and any award that is issued could also affect them. The Union claims both individuals and both businesses are responsible for violations of the collective bargaining agreement that include but are not necessarily limited to Article III (Union Security), Article IV (Bargaining Unit and Recognition), Article VI (Work Week and Payment of Wages), Article VII (Wages and Fringe Benefit Fund Contributions), Article VIII (Benefit Funds), and 8.17, C, Job Reporting, Article XII (Subletting), Article XV (Foremen), Article XVI (Stewards), Article XXIV (Bonds), and Article XXVI (Work Rules). These claims could result in orders for payment of wages and benefit fund contributions, lost wage damages, lost fringe benefit fund contribution damages, lost dues and initiation fee damages, other monetary relief, an audit order, a bond order, and/or other relief.

Article X of the Collective Bargaining Agreement provides for resolution of disputes by a Joint Arbitration Board. The Joint Arbitration Board will meet **on Tuesday, December 4, 2018, at 8:00 A.M., at the Administrative District Council office, located at 660 N. Industrial Drive, Elmhurst, Illinois 60126,** to consider the union's grievance.

**Exhibit I**

November 20, 2018
Page Two
Mr. Ken Littwin, Sr.
Mr. Ken Littwin, Jr.
Local Contracting Services Construction Co.
LCS Construction Co.
Mr. Ralph F. Tellefsen, III

We urge each of you to attend the hearing, and be prepared to present your position and respond to the claims and evidence against you.

If you have any questions, please call Ms. Christine M. Connolly at the Administrative District Council office.

Very truly yours,

James Allen
President

JA/cmc

Enclosure

IN ACCORDANCE WITH ARTICLE X OF THE COLLECTIVE BARGAINING AGREEMENT AND WORKING RULES BETWEEN THE ADMINISTRATIVE DISTRICT COUNCIL 1 OF ILLINOIS OF THE I.U.B.A.C. AND THE SIGNATORY CONTRACTORS, A HEARING WAS HELD ON DECEMBER 21, 2018, AT THE ADMINISTRATIVE DISTRICT COUNCIL 1 OFFICE, 660 N. INDUSTRIAL DRIVE, ELMHURST, ILLINOIS 60126 TO CONSIDER CLAIMS OF VIOLATIONS OF ARTICLE III, **ARTICLE IV, ARTICLE VI, ARTICLE VII, ARTICLE VIII, ARTICLE XII, ARTICLE XV, ARTICLE XVI, ARTICLE XXIV, AND ARTICLE XXVI** OF THE COLLECTIVE BARGAINING AGREEMENT, ALONG WITH CLAIMS REGARDING RESPONSIBILITY UNDER THE COLLECTIVE BARGAINING AGREEMENT. RICHARD LAUBER, JR. AND GARY PORTER WERE THE ASSOCIATION APPOINTEES PRESENT AND MICHAEL ERDENBERGER AND ROBERT FITAL WERE THE DISTRICT COUNCIL APPOINTEES PRESENT. MR. KEN LITTWIN, SR., MR. KEN LITTWIN, JR., LOCAL CONTRACTING SERVICES CONSTRUCTION COMPANY, AND LCS CONSTRUCTION COMPANY WERE NOTIFIED OF THE GRIEVANCE AND THE SCHEDULED HEARING BY LETTER ON NOVEMBER 20, 2018. (WE WILL REFER TO THOSE TWO INDIVIDUALS AND THOSE TWO BUSINESSES AS A GROUP AS "THE CONTRACTOR PARTIES.")

THE HEARING WAS ORIGINALLY SCHEDULED FOR DECEMBER 4, 2018. FOLLOWING COMMUNICATIONS BETWEEN MR. BARRY BENNETT, THE ATTORNEY FOR ADMINISTRATIVE DISTRICT COUNCIL 1 AND MS. BEVERLY ALFON, THE ATTORNEY FOR KEN LITTWIN, SR., AND LOCAL CONTRACTING SERVICES CONSTRUCTION COMPANY, THE HEARING WAS RESCHEDULED AT MS. ALFON'S REQUEST, AND THE NEW HEARING DATE WAS SET FOR DECEMBER 21. NOTICE OF THE NEW DECEMBER 21 DATE WAS GIVEN TO MS. ALFON ON DECEMBER 7, 2018, WHO CONFIRMED BY LETTER OF DECEMBER 5, 2018, THAT SHE REPRESENTED AND HAD AUTHORITY TO ACCEPT SERVICE ON BEHALF OF MR. KEN LITTWIN, SR., AND LOCAL CONTRACTING SERVICES CONSTRUCTION CO. WE HAVE NOT BEEN GIVEN DOCUMENTATION SHOWING THAT A SEPARATE LETTER WENT TO MR. KEN LITTWIN, JR. AND LCS CONSTRUCTION COMPANY TO INFORM THEM OF THE NEW DATE BUT WE WERE PROVIDED WITH COPIES OF A LETTER DATED DECEMBER 18, 2018 AND OF AN EMAIL SENT DECEMBER 20, 2018 BY KEN LITTWIN, JR. ON BEHALF OF HIMSELF AND LCS CONSTRUCTION COMPANY, WHICH SHOWED THAT THEY WERE AWARE OF THE DECEMBER 21 HEARING AND APPARENTLY HAD SUFFICIENT NOTICE TO PREPARE A LETTER EXPLAINING THEIR POSITIONS AND OBJECTIONS. NEITHER THE LETTER MR. LITTWIN JR. SENT OR THE NOTE HE SENT BY EMAIL SAID ANYTHING ABOUT A LACK OF PROPER NOTICE, AND SO WE ARE SATISFIED THAT ALL PARTIES HAD NOTICE OF THE ORIGINAL HEARING DATE AND OF THE RESCHEDULED HEARING DATE.

REPRESENTATIVES PRESENT FOR ADC 1: JACEK PROBOLA, MIKE ALORE, RUBEN COLLAZO, TIM ROSSBOROUGH AND BARRY BENNETT

REPRESENTATIVE PRESENT FOR ADC 1 BENEFIT FUNDS OFFICE: DOUG JOHNSTON

REPRESENTATIVE PRESENT FOR LOCAL CONTRACTING SERVICES, MR. KEN LITTWIN, SR., LCS CONSTRUCTION CO., AND MR. KEN LITTWIN, JR.: NONE

LCS CONSTRUCTION CO. HAS A CURRENT COLLECTIVE BARGAINING AGREEMENT SIGNED BY KEN LITTWIN, SR., ON MARCH 1, 2007 AND THE JOINT ARBITRATION BOARD RULED AFTER A HEARING ON JUNE 21, 2017, THAT KEN LITTWIN, JR., IS PERSONALLY BOUND TO THE AGREEMENT BETWEEN LCS CONSTRUCTION COMPANY AND ADMINISTRATIVE DISTRICT COUNCIL 1 AND IS BOUND TO ALL OBLIGATIONS IN THAT AGREEMENT.

THE HEARING WAS SCHEDULED TO START AT 10:00 A.M. NONE OF THE CONTRACTOR PARTIES HAD ARRIVED BY THEN, AND MR. BENNETT TOLD US THAT WHEN MS. ALFON REQUESTED THAT THE ORIGINAL HEARING DATE BE POSTPONED, THE TWO OF THEM AGREED ON DECEMBER 21 AS

**Exhibit J**

LOCAL CONTRACTING SERVICES, INC.
LCS CONSTRUCTION INC.
MR. KEN LITTWIN, SR.
MR. KEN LITTWIN, JR.
PAGE TWO

THE NEW DATE AFTER THE MEMBERS OF THE JOINT ARBITRATION BOARD INFORMED THE SECRETARY WHEN EACH OF US COULD BE AVAILABLE. MR. BENNETT ALSO TOLD US THAT MS. ALFON HAD OBJECTED IN WRITING TO THE UNION'S POSITIONS AND HAD STATED HER BELIEF THE JOINT ARBITRATION BOARD DID NOT HAVE JURISDICTION OVER HER CLIENTS, AND THAT KEN LITTWIN, JR. HAD SUBMITTED WRITTEN OBJECTIONS ON BEHALF OF HIMSELF AND LCS CONSTRUCTION COMPANY. MR. BENNETT SAID THAT NONE OF THE COMMUNICATIONS FROM MS. ALFON OR KEN LITTWIN, JR. SAID THAT ANY OF THE CONTRACTOR PARTIES WOULD NOT BE ATTENDING, AND WE CONFIRMED THAT WHEN THE HEARING ACTUALLY STARTED AND COPIES OF THOSE COMMUNICATIONS WERE PROVIDED TO US.

BECAUSE THE ORIGINAL HEARING HAD BEEN POSTPONED AT MS. ALFON'S REQUEST AND NEITHER SHE OR ANYBODY ELSE SAID THE CONTRACTOR PARTIES WOULD NOT ATTEND, WE EXPECTED THEY WOULD BE THERE AND SO WE WAITED UNTIL A LITTLE AFTER 10:30 A.M. BEFORE STARTING. MR. BENNETT TOLD US DURING THAT TIME HE WAS ATTEMPTING TO CONTACT MS. ALFON TO FIND OUT WHAT WAS HAPPENING. A LITTLE WHILE AFTER WE STARTED MR. BENNETT REPORTED HE FINALLY RECEIVED A RESPONSE FROM MS. ALFON SAYING SHE AND HER CLIENTS WOULD NOT BE ATTENDING AND SHE DID NOT KNOW WHY ANYBODY WOULD ASSUME THEY WERE GOING TO ATTEND IN SPITE OF THEIR OBJECTIONS.

AS EXPLAINED IN THE PROCEDURAL RULES THAT WE UNDERSTAND WERE SENT TO ALL OF THE CONTRACTOR PARTIES AND TO MS. ALFON, THE JOINT ARBITRATION BOARD DOES NOT FORCE ANYBODY TO ATTEND, BUT IT PROCEEDS WITH SCHEDULED HEARINGS EVEN IF ONE SIDE FAILS TO APPEAR. UNDER THESE CIRCUMSTANCES, THE JOINT ARBITRATION BOARD FELT IT WAS PROPER TO GO FORWARD AND WE ARE SATISFIED THAT WAS THE RIGHT DECISION.

THE FIRST ISSUE WE SEE BEING PRESENTED BY THIS CASE IS THE QUESTION OF WHETHER MR. KEN LITTWIN, SR., LOCAL CONTRACTING SERVICES, INC. OR BOTH OF THEM ARE BOUND TO THE LABOR CONTRACT THAT LCS CONSTRUCTION INC. HAS AND THAT MR. KEN LITTWIN, JR. IS ALSO BOUND TO. (WE ARE GOING TO REFER TO LOCAL CONTRACTING SERVICE CONSTRUCTION COMPANY AS "LOCAL," TO MR. KEN LITTWIN, SR. AS "SENIOR," TO LCS CONSTRUCTION COMPANY AS "LCS," AND TO MR. KEN LITTWIN, JR. AS "JUNIOR.")

WE HEARD AND READ AN OVERWHELMING AMOUNT OF EVIDENCE THAT CONVINCES US SENIOR AND LOCAL BOUND THEMSELVES TO THE LABOR CONTRACT AND ARE RESPONSIBLE FOR ALL OBLIGATIONS UNDER THAT CONTRACT AND FOR ALL VIOLATIONS. SENIOR SIGNED THE CONTRACT WITH ADMINISTRATIVE DISTRICT COUNCIL 1 ON BEHALF OF LCS, AND IDENTIFIED HIMSELF AS THE SECRETARY OF LCS. THE EVIDENCE SHOWED THAT DURING THE TIME THAT THESE ISSUES HAVE BEEN DEVELOPING AND WERE BEING INVESTIGATED, SENIOR AND JUNIOR BOTH PERFORMED WORK FOR EACH OF THE BUSINESSES AND BOTH OF THEM WERE SHOWN TO SUPERVISE EMPLOYEES ON THE VARIOUS JOBS. THERE WAS ALSO EVIDENCE THAT BOTH OF THEM DEALT WITH REPRESENTATIVES OF GENERAL CONTRACTORS OR CUSTOMERS ON BEHALF OF BOTH OF THE BUSINESSES. WE ALSO HEARD EVIDENCE THAT SENIOR TOLD REPRESENTATIVES OF GENERAL CONTRACTORS OR CUSTOMERS THAT HIS COMPANY WAS A UNION BUSINESS AND EMPLOYED UNION MEMBERS, EVEN THOUGH HE WAS CONTRACTING THE WORK IN THE NAME OF LOCAL AND HE WAS NOT REPORTING THE WORK AND THE HOURS TO

LOCAL CONTRACTING SERVICES, INC.
LCS CONSTRUCTION INC.
MR. KEN LITTWIN, SR.
MR. KEN LITTWIN, JR.
PAGE THREE

THE UNION OR BENEFIT FUNDS AND WAS NOT PAYING CONTRIBUTIONS OR WITHHOLDING AND PAYING OVER DUES FOR WORK BY EMPLOYEES ON THOSE JOBS.

THERE WAS EVIDENCE THAT THE TWO BUSINESSES USED AT LEAST SOME OF THE SAME EMPLOYEES, THAT THEY SHARED EQUIPMENT, THAT THEY SHARED A BUSINESS ADDRESS AND YARD, AND THE THEY SHARED VEHICLES. WE ALSO HEARD AND SAW EVIDENCE THAT MATERIAL FOR WORK ON JOBS WAS ORDERED IN THE NAME OF ONE BUSINESS EVEN THOUGH THE JOB WAS SUPPOSEDLY BEING PERFORMED BY THE OTHER BUSINESS.

WE ALSO HEARD EVIDENCE THAT SOME EMPLOYEES WERE NOT SURE ON A GIVEN JOB WHETHER THEY WERE WORKING FOR ONE BUSINESS OR THE OTHER AND WHETHER THEY WERE WORKING UNDER A UNION CONTRACT OR NOT, AND THAT AT LEAST SOME EMPLOYEES REPORTED AND BELIEVED THAT THEY HAD BEEN CHANGED FROM WORKING FOR A UNIONIZED BUSINESS UNDER A UNION CONTRACT TO BEING NON-UNION AND THAT THIS CHANGED OCCURRED BECAUSE THE BOSSES DECIDED THEY WOULD DO THINGS DIFFERENTLY.

WE ALSO NOTE THE SIMILARITY IN THE NAMES OF THE BUSINESSES, AND WE BELIEVE THAT WAS NOT A COINCIDENCE BUT WAS PART OF AN EFFORT TO CREATE CONFUSION AND MOVE FROM ONE SIDE TO THE OTHER DEPENDING ON WHAT SEEMED MORE CONVENIENT AND PROFITABLE AT THE MOMENT.

ALL THIS EVIDENCE SUPPORTS THE UNION'S CLAIMS THAT SENIOR AND LOCAL SHOULD BOTH BE FOUND TO BE BOUND TO THE LABOR CONTRACT LCS SIGNED BASED ON THE RELATIONSHIP AMONG THE INDIVIDUALS AND BUSINESSES, THE WAY THE BUSINESSES WERE OPERATED, AND WHAT WE CONCLUDE WAS AN INTENTIONAL PLAN TO USE THE SEPARATE BUSINESSES TO AVOID THE OBLIGATIONS OF THE CONTRACT. WE ALSO TAKE NOTE OF THE FACT THAT EVEN THOUGH THEY WERE NOTIFIED OF THE HEARING, AND THE HEARING DATE WAS RESCHEDULED AT THE REQUEST OF THEIR LAWYER, SENIOR AND LOCAL BOTH FAILED TO ATTEND THE HEARING AND ATTEMPT TO EXPLAIN THEIR SIDE OF THE MATTER. MR. BENNETT EXPLAINED A PARTY THAT DISPUTES THAT AN ARBITRATOR OR AN ARBITRATION PANEL HAS AUTHORITY OVER IT CAN STATE THAT IS ITS POSITION AND STILL PARTICIPATE IN THE HEARING AND PRESENT WHATEVER INFORMATION AND ARGUMENTS IT WANTS WITHOUT LOSING THE ABILITY TO MAKE ITS CLAIM OVER JURISDICTION IN COURT. WE THINK THE FACT THAT LOCAL AND SENIOR DID NOT DO THAT IS PROBABLY BECAUSE THEY RECOGNIZED THEIR OWN MISCONDUCT, AND DID NOT WANT TO HAVE TO TRY TO ANSWER QUESTIONS OR BE CALLED ON TO RESPOND TO THE EVIDENCE THE UNION PRESENTED.

WE READ AND CONSIDERED THE NOVEMBER 29 LETTER FROM SENIOR AND THE DECEMBER 19 LETTER FROM MS. ALFON. NOTHING IN THOSE LETTERS CHANGES THIS PART OF OUR DECISION. THE LETTER FROM SENIOR MAKES DEMANDS AND THREATS, AND CALLS PEOPLE NAMES, BUT DOES NOT CONTAIN ANY INFORMATION THAT THROWS INTO QUESTION THE EVIDENCE WE RECEIVED AND CONSIDERED. THE LETTER FROM MS. ALFON MAKES CLAIMS OVER JURISDICTION AND TIMELINESS, BUT LIKE SENIOR'S LETTER IT DOES NOT PRESENT ANY FACTS OR INFORMATION THAT CALL INTO QUESTION THE EVIDENCE WE RECEIVED. TURNING TO THE JURISDICTION AND TIMELINESS CLAIMS MS. ALFON RAISED, WE REJECT BOTH OF THOSE. AS

LOCAL CONTRACTING SERVICES, INC.
LCS CONSTRUCTION INC.
MR. KEN LITTWIN, SR.
MR. KEN LITTWIN, JR.
PAGE FOUR

FAR AS JURISDICTION, WE ARE CONVINCED FROM THE EVIDENCE PRESENTED THAT LOCAL AND SENIOR ARE BOUND TO THE LABOR CONTRACT AND THAT MAKES THEM SUBJECT TO THE AUTHORITY OF THE JOINT ARBITRATION BOARD. IF THEY WANT TO TAKE THAT ISSUE TO COURT, THEY CAN DO THAT BUT BASED ON THE EVIDENCE WE HEARD AND SAW, WE HAVE NO DOUBT ABOUT THIS PART OF OUR RULING.

AS FAR AS THE TIMELINESS CLAIM, WE BELIEVE THE UNION ACTED PROPERLY IN INVESTIGATING THE CASE AS FULLY AS IT COULD BEFORE PRESENTING IT TO THE JAB, AND THAT IT WAS DEALING WITH A CONTINUING SITUATION. WE FIND THE GRIEVANCE WAS FILED WITHIN 90 DAYS OF WHEN THE UNION KNEW OR REASONABLY SHOULD HAVE KNOW OF THE EXISTENCE OF THE GRIEVANCE. BECAUSE WE FIND THAT SENIOR AND LOCAL WERE INTENTIONALLY DECEIVING THE UNION AND OTHERS ABOUT WHAT THEY WERE DOING, WE THINK IT WOULD BE AGAINST THE INTENT AND MEANING OF THE CONTRACT TO ALLOW THEM TO BENEFIT FROM THEIR OWN DECEPTION BY SAYING THEY UNION DID NOT ACT SOON ENOUGH IN DISCOVERING THE SCOPE OF THE DECEPTION AND MISCONDUCT AND INITIATING THE GRIEVANCE PROCESS. ALSO, WE DO NOT FEEL THAT ANY OF THE CONTRACTOR PARTIES WAS HARMED IN ANY WAY BY THE FACT THAT THE UNION CHOSE TO CONDUCT A THOROUGH INVESTIGATION AND PIN DOWN THE AVAILABLE FACTS AND EVIDENCE BEFORE PRESENTING ITS CLAIM. FOR THESE REASONS WE FIND THE GRIEVANCE WAS FILED AND PURSUED IN A TIMELY WAY WITHIN THE MEANING OF THE CONTRACT.

BECAUSE WE HAVE FOUND THAT SENIOR AND LOCAL ARE BOUND TO THE COLLECTIVE BARGAINING AGREEMENT, THE NEXT QUESTION IS WHETHER THEY VIOLATED THAT CONTRACT. THERE IS NO QUESTION THAT THEY DID NOT FOLLOW THE CONTRACT IN PERFORMING WORK ON THE JOBS THAT WERE IDENTIFIED. BASED ON THE EVIDENCE PRESENTED, AND OUR INTERPRETATION OF THE CONTRACT, WE FIND THAT THEY VIOLATED ARTICLES III, IV, VI, VIII, XVI, AND XXIV IN CONNECTION WITH JOBS WE FIND THEY PERFORMED IN ROMEOVILLE, NEW LENOX, BUFFALO GROVE AND OSWEGO. WE THINK IT IS VERY LIKELY LOCAL AND SENIOR ALSO VIOLATED ARTICLE XV AND PROBABLY MORE THAN ONE PART OF ARTICLE XXVI, BUT THERE WAS NO EVIDENCE PRESENTED FOR THOSE VIOLATIONS AND SO WE DO NOT MAKE ANY FINDING ABOUT THEM.

BASED ON THE EVIDENCE PRESENTED THOUGH ESTIMATES AND JOB DESCRIPTIONS, WE FIND THAT SENIOR AND LOCAL ARE RESPONSIBLE FOR 900 HOURS OF BARGAINING UNIT WORK PERFORMED AT THE TOYOTA OF ROMEOVILLE JOB, WITH THAT WORK BEING PERFORMED DURING THE PERIOD COVERED BY THE CONTRACT IN EFFECT FROM JUNE 1, 2017 THROUGH MAY 31, 2018, AND THAT THEY ARE RESPONSIBLE FOR 1,200 HOURS OF BARGAINING UNIT WORK PERFORMED AT THE NEW LENOX PROJECT, 1,400 HOURS OF BARGAINING UNIT WORK ON THE BUFFALO GROVE PROJECT AND 1,100 HOURS OF BARGAINING UNIT WORK ON THE OSWEGO PROJECT, WITH THE WORK ON THOSE THREE JOBS BEING PERFORMED DURING THE TIME COVERED BY THE JUNE 1, 2018 THROUGH MAY 31, 2019 CONTRACT AND WITH THE WORK ON ALL FOUR OF THOSE JOBS BEING PERFORMED IN TOTAL DISREGARD OF THE CONTRACT. WE UNDERSTAND THESE HOUR FIGURES ARE BASED ON THE BEST ESTIMATES THE INDIVIDUALS INVOLVED COULD MAKE GIVEN THE LIMITED ACCESS THEY HAD TO JOBS, AND WE ARE SATISFIED

LOCAL CONTRACTING SERVICES, INC.
LCS CONSTRUCTION INC.
MR. KEN LITTWIN, SR.
MR. KEN LITTWIN, JR.
PAGE FIVE

THAT THOSE INDIVIDUALS ARE QUALIFIED TO MAKE ACCURATE ESTIMATES. BUT IN THE INTEREST OF FAIRNESS, WE ARE WILLING TO SCHEDULE A NEW HEARING DATE AND LET LOCAL AND SENIOR PROVIDE WHATEVER EVIDENCE THEY CHOOSE TO PRESENT ABOUT THE TOTAL AMOUNT OF BARGAINING UNIT WORK ON EACH OF THOSE FOUR JOBS, AND THEY CAN DO THAT WITHOUT AGREEING THAT THE JOINT ARBITRATION BOARD HAS JURISDICTION OVER THEM. IF LOCAL, SENIOR OR BOTH OF THEM WANT TO TAKE THAT OPPORTUNITY, MS. ALFON SHOULD NOTIFY MR. BENNETT WITHIN TEN DAYS OF THE DATE THIS AWARD IS SENT TO HER. WE WILL TREAT THE AWARD AS NOT BEING FINAL UNTIL THE END OF TEN DAYS, AND IF LOCAL AND SENIOR TAKE THIS OPPORTUNITY WE ARE OFFERING THEM AND AN ADDITIONAL HEARING SESSION IS HELD WE WILL ISSUE A NEW AWARD AFTER THE ADDITIONAL HEARING SESSION. IF LOCAL AND SENIOR REQUEST AN ADDITIONAL HEARING SESSION FOR THESE PURPOSES, THE UNION CAN ALSO PRESENT WHATEVER IT WANTS REGARDING THE HOURS.

THE JOINT ARBITRATION BOARD FINDS THAT LOCAL AND SENIOR USED AT LEAST SIX INELIGIBLE EMPLOYEES IN PERFORMING THE IMPROPER WORK, AND THEREFORE THE JOINT ARBITRATION BOARD ORDERS LOCAL AND SENIOR TO MAKE A DAMAGE PAYMENT TO ADMINISTRATIVE DISTRICT COUNCIL 1 EQUAL TO THE INITIATION FEE AND THREE MONTHS' DUES FOR SIX INDIVIDUALS.

THE JOINT ARBITRATION BOARD ALSO FINDS THAT LOCAL AND SENIOR FAILED TO REPORT FOUR JOBS WITH A CONTRACTED VALUE OF $50,000.00 OR MORE TO ADMINISTRATIVE DISTRICT COUNCIL 1 WITHIN 48 HOURS AS REQUIRED. THE JOINT ARBITRATION BOARD FINDS THAT BECAUSE OF THIS VIOLATION, LOCAL AND SENIOR ARE REQUIRED TO PAY $1,000.00 FOR EACH JOB.

NEXT THE JOINT ARBITRATION BOARD FINDS THAT ADMINISTRATIVE DISTRICT COUNCIL 1 INCURRED EXPENSES FOR INVESTIGATING THIS CASE, ALONG WITH LEGAL FEES AND COSTS THROUGH THE TIME OF THE HEARING, ALL OF WHICH WERE CAUSED BY THE IMPROPER CONDUCT OF LOCAL AND SENIOR AND ARE PROVIDED FOR IN THE CONTRACT. THEREFORE, AND AS PART OF THE REMEDY FOR THE VIOLATIONS, THE JOINT ARBITRATION BOARD ORDERS LOCAL AND SENIOR TO PAY $41,795.27 TO ADMINISTRATIVE DISTRICT COUNCIL 1 TO REIMBURSE IT FOR THOSE EXPENSES RELATED TO THE INVESTIGATION AND FOR THE LEGAL FEES AND COSTS THROUGH THE TIME OF THE HEARING.

AS A FURTHER PART OF THE REMEDY FOR THESE VIOLATIONS, THE JOINT ARBITRATION BOARD ORDERS LOCAL AND SENIOR TO MAKE DAMAGE PAYMENTS TO THE HEALTH AND WELFARE, PENSION, ANNUITY AND DCTC FUNDS EQUAL TO WHAT WOULD HAVE BEEN THE CONTRIBUTIONS FOR ALL OF THE HOURS OF WORK IF THERE HAD BEEN PROPER COMPLIANCE, AND TO MAKE A SEPARATE DAMAGE PAYMENT TO ADMINISTRATIVE DISTRICT COUNCIL 1 EQUAL TO THE CHECK-OFF DUES WHICH WOULD HAVE BEEN PAID IF THERE HAD BEEN PROPER COMPLIANCE WITH THE TERMS OF THE CONTRACT. THESE DAMAGE PAYMENT AND ALL OTHER DAMAGE PAYMENTS WILL BE BASED ON THE RATES IN EFFECT DURING THE TIME THE WORK IN QUESTION WAS PERFORMED.

LOCAL CONTRACTING SERVICES, INC.
LCS CONSTRUCTION INC.
MR. KEN LITTWIN, SR.
MR. KEN LITTWIN, JR.
PAGE SIX

IN ADDITION, THE JOINT ARBITRATION BOARD IS ASSESSING DAMAGES AGAINST LOCAL AND SENIOR BASED ON THE WAGES THAT WERE NOT PAID TO ELIGIBLE MEMBERS OF THE BARGAINING UNIT BECAUSE OF THE VIOLATIONS OF CONTRACT. BY EMPLOYING INDIVIDUALS WHO WERE NOT ELIGIBLE TO PERFORM BARGAINING UNIT WORK, LOCAL AND SENIOR DEPRIVED BRICKLAYERS WHO WERE ELIGIBLE TO PERFORM SUCH WORK OF THE OPPORTUNITY TO DO IT AND TO EARN WAGES. ALSO, WE CONCLUDE FROM THE EVIDENCE THAT LOCAL AND SENIOR VERY LIKELY PAID THE WORKERS WHO ACTUALLY PERFORMED THE WORK SUBSTANTIALLY LESS THAN THE CONTRACTUAL WAGE RATE. AS PART OF THE REMEDY FOR THIS VIOLATION, WE ORDER LOCAL AND SENIOR TO PAY DAMAGES EQUAL TO THE TOTAL NUMBER OF HOURS OF WORK THAT WERE PERFORMED IMPROPERLY, MULTIPLIED BY THE HOURLY WAGE RATES IN EFFECT AT THE APPLICABLE TIMES.

BECAUSE IT IS IMPOSSIBLE TO IDENTIFY THE INDIVIDUAL BRICKLAYERS WHO WOULD HAVE RECEIVED THE WORK OPPORTUNITIES AND EARNED THE WAGES IF LOCAL AND SENIOR HAD NOT COMMITTED THESE VIOLATIONS, WE ORDER THAT THIS PORTION OF THE DAMAGES BE DIVIDED, WITH PART GOING TO ADMINISTRATIVE DISTRICT COUNCIL 1 AND PART GOING TO THE HEALTH AND WELFARE, PENSION, ANNUITY AND DCTC FUNDS IN PROPORTION TO EACH OF THOSE FUNDS' CONTRIBUTION RATES. WE BELIEVE ORDERING THESE PAYMENTS TO BE MADE TO ADMINISTRATIVE DISTRICT COUNCIL 1 AND THESE BENEFIT FUNDS WILL BEST SERVE THE BRICKLAYERS WHO WERE IMPROPERLY DEPRIVED OF WORK OPPORTUNITIES BY THE IMPROPER ACTIONS OF LOCAL AND SENIOR.

THE EXACT DIVISION OF THESE LOST WAGE DAMAGES WILL BE MADE IN SUCH A WAY AS TO PROVIDE THAT THE TOTAL OWED TO THE FOUR BENEFIT FUNDS AND TO ADMINISTRATIVE DISTRICT COUNCIL 1, AFTER TAKING INTO ACCOUNT AMOUNTS OWED TO THE FUNDS FOR LOST CONTRIBUTION EQUIVALENT DAMAGES AND TO ADMINISTRATIVE DISTRICT COUNCIL 1 FOR LOST HOURLY DUES EQUIVALENT DAMAGES, WILL BE THE SAME.

BASED ON THE VIOLATIONS WE FIND OCCURRED, THE JOINT ARBITRATION BOARD ORDERS LOCAL AND SENIOR TO PAY DAMAGES TO THE DESIGNATED FRINGE BENEFIT FUNDS AND TO ADMINISTRATIVE DISTRICT COUNCIL 1 AS FOLLOWS:

**6/1/2017 THROUGH 05/31/2018 RATES:**

**LOST CONTRIBUTION EQUIVALENT DAMAGES TO FRINGE BENEFIT FUNDS:**

|  | RATE | HOURS | TOTAL |
|---|---|---|---|
| DISTRICT COUNCIL WELFARE FUND: | $10.45 | 900 | $9,405.00 |
| DISTRICT COUNCIL PENSION FUND: | $ 9.60 | 900 | $ 8,640.00 |
| ANNUITY: | $ 5.65 | 900 | $ 5,085.00 |
| DCTC: | $ .40 | 900 | $ 360.00 |

LOCAL CONTRACTING SERVICES, INC.
LCS CONSTRUCTION INC.
MR. KEN LITTWIN, SR.
MR. KEN LITTWIN, JR.
PAGE SEVEN

| | | | |
|---|---|---|---|
| **LOST HOURLY DUES EQUIVALENT DAMAGES:** | $ 2.41 | 900 | $ 2,169.00 |
| **LOST WAGE DAMAGES:** | $45.38 | 900 | $40,842.00 |

TOTAL LOST WAGE DAMAGES TO HEALTH AND
WELFARE, PENSION, ANNUITY AND DCTC FUNDS:                    $ 9,760.50

LOST WAGE DAMAGES TO ADMINISTRATIVE DISTRICT COUNCIL 1:     $31,081.50

## 6/1/2018 THROUGH 05/31/2019 RATES:

### LOST CONTRIBUTION EQUIVALENT DAMAGES TO FRINGE BENEFIT FUNDS:

| | RATE | HOURS | TOTAL |
|---|---|---|---|
| DISTRICT COUNCIL WELFARE FUND: | $10.65 | 3700 | $ 39,405.00 |
| DISTRICT COUNCIL PENSION FUND: | $10.40 | 3700 | $ 38,480.00 |
| ANNUITY: | $ 6.00 | 3700 | $ 22,200.00 |
| DCTC: | $ .40 | 3700 | $ 1,480.00 |
| **LOST HOURLY DUES EQUIVALENT DAMAGES:** | $ 2.49 | 3700 | $ 9,213.00 |
| **LOST WAGE DAMAGES:** | $46.19 | 3700 | $170,903.00 |

TOTAL LOST WAGE DAMAGES TO HEALTH AND
WELFARE, PENSION, ANNUITY AND DCTC FUNDS:                    $ 39,275.50

LOST WAGE DAMAGES TO ADMINISTRATIVE DISTRICT COUNCIL 1:     $131,627.50

**REIMBURSEMENT OF INVESTIGATION EXPENSES AND LEGAL
FEES THROUGH THE DATE OF HEARING:**                         $ 41,795.27

**LOST INITIATION FEE AND MONTHLY DUES DAMAGES:**           $ 5,250.00

**REPORTING VIOLATION PAYMENTS:**                           $ 4,000.00

**TOTAL:**                                                  $399,227.27

LOCAL CONTRACTING SERVICES, INC.
LCS CONSTRUCTION INC.
MR. KEN LITTWIN, SR.
MR. KEN LITTWIN, JR.
PAGE EIGHT

IF THE UNION OR THE FUNDS OBTAIN EVIDENCE OF ADDITIONAL WORK PERFORMED IN VIOLATION OF THE COLLECTIVE BARGAINING AGREEMENT, THEY MAY FILE A NEW GRIEVANCE AND THE JOINT ARBITRATION BOARD WILL CONSIDER AWARDING FURTHER DAMAGES. IF THERE IS ANY SUCH FURTHER CLAIM, IT WILL BE A NEW MATTER BECAUSE THE JOINT ARBITRATION BOARD BELIEVES THIS DECISION RESOLVES EVERYTHING PRESENTED TO US AS PART OF THE CURRENT GRIEVANCE.

AS A FURTHER REMEDY FOR THE VIOLATIONS WE HAVE FOUND, THE JOINT ARBITRATION BOARD ORDERS LOCAL AND SENIOR TO OBTAIN A BOND IN THE AMOUNT OF $120,000.00. THIS MUST BE IN EFFECT WITHIN TEN DAYS OF THE DATE THIS AWARD BECOMES FINAL. THE BOND MUST EITHER BE IN THE FORM OF A CASH BOND OR A SURETY BOND IN THE REQUIRED FORM, A COPY OF WHICH WILL BE SENT TO LOCAL AND SENIOR ALONG WITH THIS AWARD. LOCAL AND SENIOR MUST MAINTAIN THAT BOND AS PROVIDED IN THE CONTRACT. IF LOCAL AND SENIOR FAIL TO PROVIDE EITHER A REGULAR SURETY BOND IN THE REQUIRED FORM, A CASH BOND, OR SOME COMBINATION TOTALING $120,000.00 WITHIN TEN DAYS OF THE DATE THIS AWARD BECOMES FINAL, LOCAL AND SENIOR MUST STOP PERFORMING ANY WORK, REGARDLESS OF THE NAME OR BUSINESS FORM USED, WITHIN THE GEOGRAPHIC AND CRAFT JURISDICTION OF ADMINISTRATIVE DISTRICT COUNCIL 1 AND THEY MAY NOT RESUME SUCH WORK UNTIL THEY HAVE SATISFIED THIS OBLIGATION.

THE JOINT ARBITRATION BOARD ALSO ORDERS THAT IN ADDITION TO ALL OTHER REPORTING OBLIGATIONS THAT EXIST UNDER THE CONTRACT LOCAL AND SENIOR MUST PROVIDE A WRITTEN REPORT OF ALL JOB LOCATIONS WHERE THEY WORKED DURING THE PREVIOUS WEEK, OR THEY MUST REPORT THAT THEY HAD NO WORK THAT WEEK, TO THE ADMINISTRATIVE DISTRICT COUNCIL 1 OFFICE BY 4:00 P.M. EVERY MONDAY. IF LOCAL AND SENIOR FAIL TO PROVIDE THE NECESSARY JOB REPORTS BY 4:00 P.M. EVERY MONDAY, THEN LOCAL AND SENIOR WILL BE LIABLE FOR A $500.00 FINE EACH WEEK THE JOB REPORTS ARE NOT RECEIVED ON TIME, PLUS $100.00 EACH DAY AFTER THAT MONDAY UNTIL THE JOB REPORT FOR THAT WEEK IS RECEIVED BY ADMINISTRATIVE DISTRICT COUNCIL 1.

IN ADDITION, THE JOINT ARBITRATION BOARD ORDERS LOCAL AND SENIOR TO ALLOW THE UNION TO PLACE STEWARDS OF ITS OWN CHOOSING ON ALL JOBS AND TO GIVE EACH STEWARD THE OPPORTUNITY TO WORK ON EACH PROJECT WHENEVER WORK IS BEING PERFORMED. EACH STEWARD MUST BE A QUALIFIED BRICKLAYER AND MUST MEET ALL REQUIREMENTS FOR STEWARDS THAT EXIST UNDER THE CONTRACT. IF LOCAL AND SENIOR ALLOW ADMINISTRATIVE DISTRICT COUNCIL 1 TO PLACE A STEWARD OR STEWARDS ON ALL JOBS AS REQUIRED HERE, BUT THEY ALLOW EMPLOYEES TO PERFORM ANY BARGAINING UNIT WORK WITHOUT GIVING THE STEWARD OR STEWARDS THE OPPORTUNITY TO DO OR BE PART OF THE CREW DOING SUCH WORK, THEN IN ADDITION TO ANY OTHER REMEDY THAT MAY BE IMPOSED, LOCAL AND SENIOR WILL BE LIABLE TO THE APPOINTED STEWARD OR STEWARDS FOR ALL WAGES AND FOR ALL CONTRIBUTIONS TO THE BENEFIT FUNDS AS THOUGH THE STEWARD OR STEWARDS HAD BEEN PRESENT AND WORKING AT ALL TIMES BARGAINING UNIT WORK WAS BEING PERFORMED. IF LOCAL AND SENIOR DO NOT COMPLY WITH THIS PART OF THE AWARD BY ALLOWING ADMINISTRATIVE DISTRICT COUNCIL 1 TO PLACE STEWARDS OF ITS OWN CHOOSING ON EACH JOB, THEN IN ADDITION TO ANY OTHER REMEDY THAT MAY BE IMPOSED, THEY WILL BE

LOCAL CONTRACTING SERVICES, INC.
LCS CONSTRUCTION INC.
MR. KEN LITTWIN, SR.
MR. KEN LITTWIN, JR.
PAGE NINE

REQUIRED TO MAKE A PAYMENT TO ADMINISTRATIVE DISTRICT COUNCIL 1 EQUAL TO THE FULL WAGE AND BENEFIT AMOUNT FOR ALL HOURS ON EACH JOB THAT ANY ONE OR MORE EMPLOYEES OF LOCAL OR SENIOR WERE PERFORMING ANY BARGAINING UNIT WORK.

ALL OF THE MONETARY AND OTHER OBLIGATIONS IMPOSED BY THIS AWARD ARE THE JOINT RESPONSIBILITY OF LOCAL AND SENIOR.

UNLESS LOCAL AND SENIOR MAKE THE PAYMENTS AS REQUIRED WITHIN TEN DAYS OF THE DATE THIS AWARD BECOMES FINAL THEY MUST STOP PERFORMING ANY WORK, REGARDLESS OF THE NAME OF BUSINESS FORM USED, WITHIN THE GEOGRAPHIC AND CRAFT JURISDICTION OF ADMINISTRATIVE DISTRICT COUNCIL 1 AND THEY MAY NOT RESUME SUCH WORK UNTIL THEY HAVE MADE THE REQUIRED PAYMENTS.

THE OBLIGATIONS THIS AWARD IMPOSES ON LOCAL AND SENIOR WILL NOT BECOME APPLICABLE IF LOCAL AND SENIOR ASK WITHIN TEN DAYS TO PRESENT INFORMATION TO THE JOINT ARBITRATION BOARD REGARDING THE AMOUNT OF BARGAINING UNIT WORK PERFORMED ON THE FOUR JOBS, AND IF THEY DO THAT THEY WILL NOT BE SUBJECT TO THESE OBLIGATIONS UNTIL THAT NEW HEARING IS HELD AND A FURTHER AWARD IS ISSUED.

IF LCS AND SENIOR FAIL TO FULLY COMPLY FULLY WITH THIS AWARD, THEY MUST REIMBURSE THE UNION AND/OR THE BENEFIT FUNDS FOR ALL COSTS AND LEGAL FEES STARTING WITH THE DATE THE AWARD BECOMES FINAL, AND THEY MUST PAY INTEREST ON ALL AMOUNTS OWED AT THE RATE OF 10% A YEAR FROM THE DATE OF THE HEARING, DECEMBER 21, 2018 TO THE DATE OF PAYMENT.

THE LAST QUESTION WE SEE IS HOW ALL OF THIS AFFECTS JUNIOR AND WHATEVER REMAINS OF LCS. THE UNION ARGUED THAT BECAUSE JUNIOR AND LCS ARE BOUND TO THE CONTRACT, THEY SHOULD BE FOUND RESPONSIBLE FOR VIOLATIONS COMMITTED BY LOCAL AND SENIOR AND SHOULD BE JOINTLY RESPONSIBLE ALONG WITH LOCAL AND SENIOR FOR ALL DAMAGES AND OTHER RELIEF. EVEN THOUGH WE BELIEVE THAT MIGHT BE CORRECT, WE ARE NOT DECIDING THAT NOW OR ISSUING ANY AWARD AGAINST JUNIOR AND LCS AT THIS TIME. THAT IS BECAUSE WE RECOGNIZE JUNIOR AND LCS ARE NOT REPRESENTED BY MS. ALFON OR ANY OTHER ATTORNEY AND BASED ON THE LETTERS JUNIOR SENT, WE ARE NOT SURE HE UNDERSTOOD THE CLAIMS AGAINST HIM AND LCS AND HOW THEY FIT IN WITH THE CLAIMS AGAINST LOCAL AND SENIOR. UNDER THE CIRCUMSTANCES, WE HAVE DECIDED TO SEPARATE THE CLAIMS PRESENTED BY THIS CASE AGAINST JUNIOR AND LCS FROM THE CLAIMS AGAINST LOCAL AND SENIOR THAT WE HAVE RULED ON. IF THE UNION DECIDES TO PURSUE THESE CLAIMS AGAINST JUNIOR AND LCS OR EITHER OF THEM, IT CAN DO THAT BY INITIATING A NEW GRIEVANCE AGAINST EITHER OR BOTH OF THEM WITHIN THREE MONTHS OF THE DATE THIS AWARD IS MAILED. IF THE UNION DOES THAT, IT WILL BE TREATED AS A SEPARATE CLAIM AGAINST JUNIOR AND LCS. IN PRESENTING ANY SUCH NEW CLAIM AGAINST JUNIOR AND LCS, THE UNION MAY POINT TO INFORMATION PRESENTED IN THIS CASE AND FINDINGS REACHED BY THE JOINT ARBITRATION BOARD, BUT THAT WOULD BE SUBJECT TO THE RIGHT OF JUNIOR AND LCS TO OBJECT AND TO ANY INSTRUCTIONS GIVEN BY THE JOINT ARBITRATION BOARD HEARING SUCH A SEPARATE CASE.

LOCAL CONTRACTING SERVICES, INC.
LCS CONSTRUCTION INC.
MR. KEN LITTWIN, SR.
MR. KEN LITTWIN, JR.
PAGE TEN

TO AVOID ANY CONFUSION, WE ARE GOING TO SUMMARIZE WHERE THIS AWARD LEAVES THINGS. FIRST, THERE IS NO AWARD ISSUED AGAINST JUNIOR AND LCS AND NO PENDING CLAIM AGAINST THEM. ADMINISTRATIVE DISTRICT COUNCIL 1 HAS THREE MONTHS FROM THE TIME THIS AWARD IS MAILED OUT TO FILE A CLAIM AGAINST JUNIOR AND LCS REGARDING THESE MATTERS. IF IT DOES THAT, IT WILL BE TREATED AS A NEW AND SEPARATE GRIEVANCE AND WE WILL NOT HOLD THE DELAY BETWEEN THE FIRST GRIEVANCE AND ANY SUCH SECOND GRIEVANCE AGAINST ADMINISTRATIVE DISTRICT COUNCIL 1. SECOND, WE HAVE FOUND LOCAL AND SENIOR ARE BOUND TO THE COLLECTIVE BARGAINING AGREEMENT AND RESPONSIBLE FOR OBLIGATIONS UNDER IT AND VIOLATIONS OF IT, WE HAVE ORDERED THEM TO PROVIDE A BOND FOR $120,000.00 WITHIN TEN DAYS OF WHEN THE AWARD BECOMES FINAL AND TO STOP ALL WORK UNLESS AND UNTIL THEY PROVIDE THAT BOND, WE HAVE IMPOSED VARIOUS OTHER NON-MONETARY OBLIGATIONS ON THEM, TO BE EFFECTIVE WHEN THE AWARD BECOMES FINAL, AND WE HAVE AWARDED THE DAMAGES AGAINST THEM AS STATED, SUBJECT TO GIVING THEM AN OPPORTUNITY AS WE EXPLAINED TO APPEAR AND PRESENT EVIDENCE ABOUT THE AMOUNT OF BARGAINING UNIT WORK PERFORMED ON THE FOUR JOBS. IF THEY DO NOT MAKE THAT REQUEST WITHIN THE TIME AND IN THE WAY PROVIDED, THE AWARD WILL BECOME FINAL ON THE ELEVENTH DAY AFTER WE TRANSMIT THE AWARD TO THEM THROUGH MS. ALFON. IF THEY ASK FOR THE CHANCE TO PRESENT SUCH INFORMATION, THE AWARD WILL BE HELD OPEN UNTIL A NEW SESSION IS HELD AND A FURTHER AWARD IS ISSUED. SUBJECT TO THAT POSSIBILITY, WE CONSIDER THIS AWARD TO BE FINAL AND TO RESOLVE ALL ISSUED BEFORE US.


GARY PORTER                          MICHAEL ERDENBERGER


RICHARD LAUBER, JR.                  ROBERT FITAL

IN ACCORDANCE WITH ARTICLE X OF THE COLLECTIVE BARGAINING AGREEMENT AND WORKING RULES BETWEEN THE ADMINISTRATIVE DISTRICT COUNCIL 1 OF ILLINOIS OF THE I.U.B.A.C. AND THE SIGNATORY CONTRACTORS, A HEARING WAS HELD ON APRIL 3, 2019 AT THE ADMINISTRATIVE DISTRICT COUNCIL 1 OFFICE, 660 N. INDUSTRIAL DRIVE, ELMHURST, ILLINOIS 60126 TO CONSIDER THE ISSUE OF HOURS AS EXPLAINED IN THE AWARD ISSUED FOLLOWING THE DECEMBER 21, 2018 JAB HEARING. AS WE WILL EXPLAIN, WE ARE ATTACHING A COPY OF THAT EARLIER AWARD AND MAKING IT A PART OF THIS AWARD. RICHARD LAUBER, JR. AND GARY PORTER WERE THE ASSOCIATION APPOINTEES PRESENT AND MICHAEL ERDENBERGER AND ROBERT FITAL WERE THE DISTRICT COUNCIL APPOINTEES PRESENT. MR. KEN LITTWIN, SR., AND LOCAL CONTRACTING SERVICES CONSTRUCTION COMPANY WERE NOTIFIED OF THE SCHEDULED HEARING BY LETTER ON MARCH 21, 2019.

REPRESENTATIVES PRESENT FOR ADC 1: JACEK PROBOLA, MIKE ALORE, RUBEN COLLAZO, TIM ROSSBOROUGH AND BARRY BENNETT

REPRESENTATIVE PRESENT FOR ADC 1 BENEFIT FUNDS OFFICE: DOUG JOHNSTON

REPRESENTATIVE PRESENT FOR LOCAL CONTRACTING SERVICES CONSTRUCTION CO., AND MR. KEN LITTWIN, SR.: MR. KEN LITTWIN, SR.

FOR CONVENIENCE, WE ARE GOING TO USE THE SAME SHORTHAND TERMS IN THIS AWARD AS WE USED IN THE AWARD ISSUED AFTER THE DECEMBER 21 HEARING. MEANING WE WILL REFER TO LOCAL CONTRACTING SERVICES CONSTRUCTION CO. AS "LOCAL," TO MR. KEN LITTWIN, SR. AS "SENIOR," TO LCS CONSTRUCTION COMPANY AS "LCS" AND TO MR. KEN LITTWIN, JR. AS "JUNIOR." IN ADDITION, WE WILL REFER TO ADMINISTRATIVE DISTRICT COUNCIL 1 OF THE I.U.B.A.C. AS "ADMINISTRATIVE DISTRICT COUNCIL 1."

LCS HAS A CURRENT COLLECTIVE BARGAINING AGREEMENT SIGNED BY SENIOR, ON MARCH 1, 2007 AND THE DECISION AND AWARD ISSUED BY THE JOINT ARBITRATION BOARD AFTER A HEARING ON JUNE 21, 2017, FOUND THAT JUNIOR IS PERSONALLY BOUND TO THAT AGREEMENT BETWEEN LCS AND ADMINISTRATIVE DISTRICT COUNCIL 1 AND IS BOUND TO AND RESPONSIBLE FOR ALL OBLIGATIONS IN THAT AGREEMENT. AS EXPLAINED IN THE AWARD AND DECISION ISSUED BY THE JOINT ARBITRATION BOARD FOLLOWING THE HEARING ON DECEMBER 21, 2018, WHICH WE WILL DISCUSS MORE IN OTHER PARTS OF THIS AWARD, INCLUDING IN THE NEXT PARAGRAPH, THE JOINT ARBITRATION BOARD FOUND THAT BOTH SENIOR AND LOCAL ARE ALSO BOUND TO THE COLLECTIVE BARGAINING AGREEMENT AND RESPONSIBLE FOR ALL OBLIGATIONS UNDER IT.

WE ARE ATTACHING AND INCORPORATING A COPY OF THE DECISION AND AWARD ISSUED FOLLOWING THE HEARING ON DECEMBER 21, 2018, AND WE ARE MAKING IT PART OF THIS FINAL DECISION AND AWARD, SUBJECT TO THE CHANGES WE WILL DISCUSS IN THE LAST PARAGRAPH OF THIS DECISION AND AWARD. AS PROVIDED IN THAT EARLIER DECISION AND AWARD, WE GAVE LOCAL AND SENIOR A CHANCE TO REQUEST ANOTHER SESSION OF THE JOINT ARBITRATION BOARD TO PRESENT WHATEVER EVIDENCE THEY WANTED REGARDING THE AMOUNT OF BARGAINING UNIT WORK PERFORMED ON THE FOUR JOBS IDENTIFIED IN THE EARLIER AWARD. WE RULED THEY COULD DO THAT WITHOUT GIVING UP THEIR CLAIM THAT THEY ARE NOT BOUND TO THE COLLECTIVE BARGAINING AGREEMENT OR SUBJECT TO THE JOINT ARBITRATION BOARD'S AUTHORITY. WE ALSO PROVIDED THAT IF THEY REQUESTED THAT SUCH A SECOND HEARING TAKE PLACE, THE UNION COULD PRESENT ANYTHING IT WANTED REGARDING THE AMOUNT OF WORK INVOLVED.

**Exhibit K**

LOCAL CONTRACTING SERVICES CONSTRUCTION, CO.
MR. KEN LITTWIN, SR.
PAGE TWO OF THREE

WE PROVIDED IN THE EARLIER AWARD THAT IT WOULD NOT BE CONSIDERED FINAL UNTIL EITHER THE NEW SESSION WAS HELD AND A FURTHER DECISION WAS ISSUED OR UNTIL TEN DAYS FROM WHEN THE EARLIER AWARD WAS SENT TO THE LAWYER WHO REPRESENTED SENIOR AND LOCAL AT THE TIME IF THEY DID NOT REQUEST A FURTHER HEARING. NOW THAT THE SECOND HEARING HAS TAKEN PLACE, WE ARE ISSUING WHAT IS THE FINAL AWARD, WHICH CONSISTS OF THIS FURTHER AWARD BASED ON WHAT WAS PRESENTED AT THE HEARING ON APRIL 3, 2019, AND THE AWARD ISSUED FOLLOWING THE HEARING ON DECEMBER 21, 2018, WHICH WE ARE ATTACHING TO THIS AWARD AND WHICH THE MEMBERS OF THE JOINT ARBITRATION BOARD HAVE INITIALED BESIDE OUR SIGNATURES. THIS DECISION AND AWARD AND THE DECISION AND AWARD ISSUED FOLLOWING THE DECEMBER 21, 2018 HEARING ARE MEANT TO BE A SINGLE DOCUMENT WHICH SETS FORTH OUR FINDINGS AND RULINGS. ALL REFERENCES IN THE EARLIER DECISION AND AWARD TO THE OPPORTUNITY FOR A FURTHER HEARING AND TO THAT DECISION NOT BEING FINAL ARE NO LONGER APPLICABLE, AND THE TWO DOCUMENTS TOGETHER ARE OUR SINGLE, FINAL AWARD.

THE JOINT ARBITRATION BOARD REVIEWED THE INTERNAL COMPANY DOCUMENTS THAT SENIOR PRESENTED AS HIS PROOF OF THE HOURS WORKED ON THE FOUR JOBS. SENIOR DID NOT PROVIDE TIME SHEETS OR ANY OF THE UNDERLYING DOCUMENTS THAT WOULD VERIFY HIS CLAIMS. HE ALSO AGREED THAT HE DID NOT DIVIDE WORK BETWEEN BRICKLAYERS AND LABORERS IN THE WAY THAT WOULD BE REQUIRED UNDER THE COLLECTIVE BARGAINING AGREEMENT AND HE GAVE SEVERAL EXAMPLES OF WORK THAT HE ASSIGNED LABORERS TO PERFORM THAT WOULD BE THE WORK OF BRICKLAYERS UNDER THE COLLECTIVE BARGAINING AGREEMENT.

IN RESPONSE, THE UNION ACCEPTED THE INFORMATION THAT SENIOR PRESENTED ON ONE OF THE JOBS, WHERE HE REPORTED ALMOST 900 MORE HOURS OF BARGAINING UNIT WORK THAN THE JOINT ARBITRATION BOARD HAD DETERMINED BASED ON THE ESTIMATES THE UNION PRESENTED AT THE DECEMBER 21 HEARING. FOR TWO OF THE OTHER JOBS, UNION REPRESENTATIVES PROVIDED MEASUREMENTS, DESCRIPTIONS OF THE WORK, AND EXPLANATIONS OF THE PRODUCTION RATES THEY WORKED FROM, MOST OF WHICH SENIOR DID NOT CHALLENGE. BASED ON THAT INFORMATION, UNION REPRESENTATIVES ARGUED THAT THE ACTUAL AMOUNT OF BARGAINING UNIT WORK PERFORMED ON THOSE TWO JOBS WAS SUBSTANTIALLY HIGHER THAN SENIOR CLAIMED, AND THEY SUGGESTED PART OF THE DIFFERENCE MIGHT BE EXPLAINED BY SENIOR HAVING ASSIGNED WHAT IS RECOGNIZED UNDER THE COLLECTIVE BARGAINING AGREEMENT AS THE WORK OF BRICKLAYERS TO LABORERS. ON THE FINAL JOB, THE UNION REPRESENTATIVE WORKED FROM HIS INFORMATION AS TO THE DOLLAR VALUE OF THE JOB AND MADE CALCULATIONS FROM THAT FOR THE AMOUNT OF BRICKLAYING WORK HE ESTIMATED INVOLVED.

BECAUSE OF THE SUBSTANTIALLY HIGHER NUMBER OF HOURS THAT SENIOR PROVIDED FOR THE ONE JOB, THE OVERALL DIFFERENCE BETWEEN WHAT HE PRESENTED AS THE TOTAL AMOUNT OF BARGAINING UNIT WORK ON THE FOUR JOBS, AND WHAT THE UNION PRESENTED, WAS NOT THAT GREAT. THERE IS NO DISPUTE THAT SENIOR DID NOT FOLLOW THE REQUIREMENTS OF THE COLLECTIVE BARGAINING AGREEMENT IN MAKING WORK ASSIGNMENTS. IF HE HAD DONE THAT, OR IF WE APPLIED WHAT ARE THE NORMAL RATIOS BETWEEN BRICKLAYER HOURS AND LABORER HOURS, IT SEEMS LIKELY THAT THE OVERALL TOTAL FOR THE AMOUNT OF BARGAINING

LOCAL CONTRACTING SERVICES CONSTRUCTION, CO.
MR. KEN LITTWIN, SR.
PAGE THREE OF THREE

UNIT WORK PERFORMED ON THE FOUR JOBS WOULD HAVE BEEN MUCH HIGHER TAKING INTO ACCOUNT THE JOB WHERE SENIOR REPORTED ALMOST 900 MORE HOURS OF BRICKLAYER WORK THAN THE JOINT ARBITRATION BOARD HAD FOUND FROM THE INFORMATION PROVIDED AT THE DECEMBER 21 HEARING. ALSO, WHILE WE ARE NOT SAYING THAT SENIOR WAS INTENTIONALLY MISSTATING THE HOURS ON THE OTHER JOBS, WE ARE NOT WILLING SIMPLY TO ACCEPT HIS STATEMENTS ABOUT THE AMOUNT OF WORK INVOLVED WHEN HE ONLY SHOWED INTERNAL DOCUMENTS AND DID NOT PROVIDE ANY OF THE UNDERLYING DOCUMENTATION.

TAKING ALL OF THESE CONSIDERATIONS INTO ACCOUNT, THE JOINT ARBITRATION BOARD HAS DETERMINED FROM ALL THE FACTS, INFORMATION, DOCUMENTS AND ARGUMENTS PRESENTED THAT THE NUMBERS CONTAINED IN THE DECISION ISSUED AFTER DECEMBER 21 HEARING ARE MORE LIKELY TO BE ACCURATE THAN ANY OTHER SET OF NUMBERS. ACCORDINGLY, AND BASED ON OUR CONSIDERATION OF ALL THE AVAILABLE FACTS AND INFORMATION, THE JOINT ARBITRATION BOARD AFFIRMS ALL PARTS OF THE FINDINGS IN THE EARLIER DECISION AND AWARD AS TO THE AMOUNT OF BARGAINING UNIT WORK PERFORMED IN VIOLATION OF THE CONTRACT, AND SO AFFIRMS THE DAMAGE AWARD. THEREFORE THE DECISION ISSUED FOLLOWING THE HEARING ON DECEMBER 21, 2018 IS UPHELD AND IS NOW CONSIDERED TO BE FINAL.

TO AVOID ANY CONFUSION, WE ARE GOING TO SUMMARIZE HOW THIS AWARD, INCLUDING THE ATTACHED AWARD THAT WAS ISSUED AFTER THE HEARING ON DECEMBER 21, 2018, RESOLVES THE MATTERS BEFORE US:

1. EXCEPT AS SPECIFICALLY STATED HERE, THE ATTACHED AWARD ISSUED AFTER THE DECEMBER 21 HEARING SETS OUT OUR FINAL DECISION.

2. THE REFERENCES IN THE EARLIER AWARD TO IT NOT BEING FINAL NO LONGER APPLY, THE AWARD WE ARE ISSUING NOW (WHICH INCORPORATES THE EARLIER AWARD EXCEPT AS STATED) IS FINAL, AND THE TIME PERIODS FOR PROVIDING THE REQUIRED BOND, MAKING THE REQUIRED PAYMENTS, STOPPING WORK IF THE BOND IS NOT PROVIDED OR THE PAYMENTS ARE NOT MADE AND ASSESSING ADDITIONAL LEGAL FEES AND COSTS IN FAVOR OF THE UNION AND/OR BENEFIT FUNDS IF THERE IS NOT FULL COMPLIANCE WILL BEGIN TO RUN AS OF THE DATE THIS AWARD IS MAILED TO LOCAL AND SENIOR.

3. THE DAMAGE AWARD AS SET FORTH IN THE ATTACHED AWARD ISSUED FOLLOWING THE EARLIER HEARING SETS OUT THE APPLICABLE DAMAGE AWARD.

4. AS PROVIDED IN THE EARLIER AWARD, WE ARE NOT ISSUING AN AWARD AGAINST JUNIOR AND LCS AND THERE IS NO PENDING CLAIM AGAINST THEM. ADMINISTRATIVE DISTRICT COUNCIL 1 HAS THREE MONTHS FROM THE WHEN THE EARLIER AWARD WAS MAILED OUT TO FILE A CLAIM AGAINST JUNIOR AND LCS REGARDING THESE MATTERS.

GARY PORTER                          MICHAEL ERDENBERGER

RICHARD LAUBER, JR.                  ROBERT FITAL



*International Union*

𝓑𝓻𝓲𝓬𝓴𝓵𝓪𝔂𝓮𝓻𝓼 AND 𝓐𝓵𝓵𝓲𝓮𝓭 𝓒𝓻𝓪𝓯𝓽𝔀𝓸𝓻𝓴𝓮𝓻𝓼

ADMINISTRATIVE DISTRICT COUNCIL 1 OF ILLINOIS



HEADQUARTERS
660 N. INDUSTRIAL DRIVE
ELMHURST, ILLINOIS 60126

PHONE: 630•941•2300
FAX: 630•941•2301

PRESIDENT
JAMES ALLEN

SECRETARY - TREASURER
MICHAEL LOWERY

May 13, 2019

**VIA CERTIFIED & REGULAR MAIL**

Mr. Ken Littwin, Sr.
Local Contracting Srvs. Const. Co.
1061 Waveland Avenue
Franklin Park, IL 60131

Mr. Ken Littwin, Jr.
LCS Construction Co.
1061 Waveland Avenue
Franklin Park, IL 60131

Mr. Ken Littwin, Sr.
Local Contracting Srvs Const. Co.
3804 Wilkie Rd.
Rolling Meadows, IL. 60008

Mr. Ken Littwin, Jr. ⮑
LCS Construction Co.
3804 Wilkie Rd.
Rolling Meadows, IL. 60008

klittwin@yahoo.com
ken_littwinjr@yahoo.com

Dear Contractor:

Our letter dated March 21, 2019 informed Mr. Littwin, Sr. and Local Contracting that a further Joint Arbitration Board hearing would be held on April 3, 2019 as they requested through Ms. Alfon to address further issues in connection with the dispute between you and the union.

The Joint Arbitration Board heard the case based on the information, evidence, and arguments presented by Tim Rossborough, Ruben Collazo, Jack Probola, Mike Alore, Barry Bennett and Ken Littwin, Sr., and a decision was rendered.

The decision of the Joint Arbitration Board is enclosed, along with the incorporated December 21, 2018 award and we expect Mr. Littwin, Sr. and Local Contracting to comply with it. We are providing copies to Mr. Littwin, Jr. and LCS for their information.

Sincerely,

James Allen
President

JA/cmc

**Exhibit L**



7017 2620 0000 1290 7411

*speeches*

II. 1



Mr. Ken Littwin, Sr.
Local Contracting Srvs. Const. Co.
1061 Waveland Avenue
Franklin Park, IL 60131

SENDER: COMPLETE THIS SECTION

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Mr. Ken Littwin, Sr.
Local Contracting Srvs. Const. Co.
1061 Waveland Avenue
Franklin Park, IL 60131

9590 9402 2318 6225 2164 60

2. 7017 2620 0000 1290 7411

COMPLETE THIS SECTION ON DELIVERY

A. Signature
X _____ ☐ Agent
☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery
LITWIN    5-31-19

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:  ☐ No

Received

JUN    2019

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Restricted Delivery

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

**Exhibit M**

*International Union*



*Bricklayers* AND *Allied Craftworkers*

HEADQUARTERS
660 N. INDUSTRIAL DRIVE
ELMHURST, ILLINOIS 60126

PHONE: 630•941•2300
FAX: 630•941•2301

ADMINISTRATIVE DISTRICT COUNCIL 1 OF ILLINOIS

PRESIDENT
JAMES ALLEN

SECRETARY · TREASURER
MICHAEL LOWERY

May 10, 2019

## VIA CERTIFIED & REGULAR MAIL AND EMAIL

Mr. Ken Littwin, Jr.
LCS Construction Co.
1061 Waveland Avenue
Franklin Park, IL 60131

Mr. Ken Littwin, Jr.
LCS Construction Co.
3804 Wilkie Rd.
Rolling Meadows, IL. 60008

Ken_littwinjr@yahoo.com

Dear Contractors:

The union claims you violated the Collective Bargaining Agreement to which you are bound, including but not necessarily limited to Article III (Union Security), Article IV (Bargaining Unit and Recognition), Article VI (Work Week and Payment of Wages), Article VII (Wages and Fringe Benefit Fund Contributions), Article VIII (Benefit Funds), Article XII (Subletting), Article XIII (Employees, Employers, Associations, and Unions), Article XV (Foremen), Article XXIV (Bonds), and Article XXVI (Work Rules). This grievance involves claims over your obligations in connection with the jobs that were identified in the award issued following the hearing on December 21, 2018.

Article X of the Collective Bargaining Agreement provides for resolution of disputes by a Joint Arbitration Board. The Joint Arbitration Board will meet on **Thursday, June 13, 2019 at 8:00 A. M. at the Administrative District Council office located at 660 N. Industrial Drive, Elmhurst, Illinois 60126,** to consider this claim. We urge you to attend the hearing and be prepared to present your position and respond to the claims and evidence against you.

If you have any questions, please call Ms. Christine M. Connolly at the Administrative District Council office.

Very truly yours,

James Allen
President

JA/cmc

Enclosure

**Exhibit N**

IN ACCORDANCE WITH ARTICLE X OF THE COLLECTIVE BARGAINING AGREEMENT AND WORKING RULES BETWEEN THE ADMINISTRATIVE DISTRICT COUNCIL 1 OF ILLINOIS OF THE I.U.B.A.C. AND THE SIGNATORY CONTRACTORS, A HEARING WAS HELD ON JUNE 13, 2018 AT THE ADMINISTRATIVE DISTRICT COUNCIL 1 OFFICE, 660 N. INDUSTRIAL DRIVE, ELMHURST, ILLINOIS 60126 TO CONSIDER CLAIMS OF VIOLATIONS OF ARTICLE III, ARTICLE IV, ARTICLE VI, ARTICLE VII, ARTICLE VIII, ARTICLE XII, ARTICLE XIII, ARTICLE XV, ARTICLE XXIV, AND ARTICLE XXVI OF THE COLLECTIVE BARGAINING AGREEMENT AGAINST KEN LITTWIN, JR. AND LCS CONSTRUCTION CO. RICHARD H. LAUBER, JR. AND GARY PORTER WERE THE ARBITRATORS APPOINTED BY THE ASSOCIATION AND MICHAEL ERDENBERGER AND ROBERT FITAL WERE THE ARBITRATORS APPOINTED BY THE UNION. MR. KEN LITTWIN, JR. AND LCS CONSTRUCTION COMPANY WERE NOTIFIED OF THE GRIEVANCE AND THE SCHEDULED HEARING BY LETTER ON MAY 10, 2019.

REPRESENTATIVE PRESENT FOR ADC 1 BENEFIT FUNDS: DOUG JOHNSTON

REPRESENTATIVE PRESENT FOR ADC 1: MIKE ALORE AND BARRY BENNETT

REPRESENTATIVE PRESENT LCS CONSTRUCTION CO., MR. KEN LITTWIN, JR.: NONE

LCS CONSTRUCTION CO. HAS A CURRENT COLLECTIVE BARGAINING AGREEMENT, WHICH WAS SIGNED ON MARCH 1, 2007, BY KEN LITTWIN. THE AWARD ISSUED FOLLOWING THE HEARING ON JUNE 21, 2017, FOUND THAT MR. KEN LITTWIN, JR. IS PERSONALLY BOUND TO THE COLLECTIVE BARGAINING AGREEMENT, AND THAT FINDING AND AWARD STAND. WE WILL USE THE TERM "THE CONTRACTOR" TO REFER TO LCS CONSTRUCTION CO. AND MR. KEN LITTWIN, JR. ALSO, AS WE DID PREVIOUSLY WE WILL USE THE TERM "JUNIOR" TO REFER TO MR. KEN LITTWIN, JR., WE WILL ALSO USE THE TERM "LCS" TO REFER TO LCS CONSTRUCTION COMPANY, WE WILL USE THE TERM "SENIOR" TO REFER TO MR. KEN LITTWIN, SR., AND WE WILL USE THE TERM "LOCAL" TO REFER TO LOCAL CONTRACTING SERVICES, INC.

THE JOINT ARBITRATION BOARD CONSIDERED THE AWARDS ISSUED FOLLOWING THE HEARINGS ON DECEMBER 21, 2018 AND APRIL 3, 2019. WE ARE AWARE THE PARTIES IDENTIFIED HERE AS THE CONTRACTOR WERE GIVEN NOTICE OF THE DECEMBER 21 HEARING AND OF THE DECISION ISSUED FOLLOWING THAT HEARING. AS WE SEE IT THERE ARE FOUR CONTROLLING FACTS: (1) LCS (IN WHATEVER FORM IT CONTINUES TO EXIST, IF AT ALL) IS THE SIGNATORY PARTY TO THE COLLECTIVE BARGAINING AGREEMENT IN ITS NAME AND THEREFORE IS RESPONSIBLE FOR ALL OBLIGATIONS UNDER THAT CONTRACT, (2) JUNIOR HAS BEEN FOUND TO BE BOUND TO THAT CONTRACT AND RESPONSIBLE FOR ALL OBLIGATIONS UNDER IT, (3) LOCAL AND SENIOR HAVE ALSO BEEN FOUND TO BE BOUND TO THAT CONTRACT AND RESPONSIBLE FOR ALL OBLIGATIONS UNDER IT, AND (4) LOCAL AND SENIOR WERE FOUND TO HAVE PERFORMED THE SPECIFIED AMOUNT OF WORK ON THE FOUR JOBS IN QUESTION AND TO HAVE DONE SO AS PART OF A SCHEME TO CREATE CONFUSION AS TO WHO IS WHO AND WHAT IS WHAT AMONG LCS, LOCAL, JUNIOR, AND SENIOR.

OUR RULINGS AND CONCLUSIONS ARE BASED ON OUR INTERPRETATION OF THE COLLECTIVE BARGAINING AGREEMENT, OUR DETERMINATIONS AS TO THE FACTS OF WHAT HAPPENED, AND OUR INTERPRETATION OF HOW THE PREVIOUS DECISIONS AND AWARDS SHOULD BE CONSIDERED IN LIGHT OF THE CONTRACT AND THE FACTS. BASED ON THAT, WE FIND THAT LCS AND JUNIOR ARE RESPONSIBLE, ALONG WITH LOCAL AND SENIOR, FOR THE PERFORMANCE OF WORK ON THE FOUR JOBS IN TOTAL DISREGARD OF THE CONTRACT AND THEREFORE JUNIOR

**Exhibit O**

AND LCS
LCS CONSTRUCTION CO.
MR. KEN LITTWIN, JR.
PAGE TWO OF FOUR

ALONG WITH SENIOR AND LOCAL ARE RESPONSIBLE FOR THE FOLLOWING DAMAGES:

## 6/1/2017 THROUGH 05/31/2018 RATES:
### LOST CONTRIBUTION EQUIVALENT DAMAGES TO FRINGE BENEFIT FUNDS:

|  | RATE | HOURS | TOTAL |
|---|---|---|---|
| DISTRICT COUNCIL WELFARE FUND: | $10.45 | 900 | $ 9,405.00 |
| DISTRICT COUNCIL PENSION FUND: | $ 9.60 | 900 | $ 8,640.00 |
| ANNUITY: | $ 5.65 | 900 | $ 5,085.00 |
| DCTC: | $ .40 | 900 | $ 360.00 |
| **LOST HOURLY DUES EQUIVALENT DAMAGES:** | $ 2.41 | 900 | $ 2,169.00 |
| **LOST WAGE DAMAGES:** | $45.38 | 900 | $40,842.00 |

TOTAL LOST WAGE DAMAGES TO HEALTH AND
WELFARE, PENSION, ANNUITY AND DCTC FUNDS: $ 9,760.50

LOST WAGE DAMAGES TO ADMINISTRATIVE DISTRICT COUNCIL 1: $31,081.50

## 6/1/2018 THROUGH 05/31/2019 RATES:
### LOST CONTRIBUTION EQUIVALENT DAMAGES TO FRINGE BENEFIT FUNDS:

|  | RATE | HOURS | TOTAL |
|---|---|---|---|
| DISTRICT COUNCIL WELFARE FUND: | $10.65 | 3700 | $ 39,405.00 |
| DISTRICT COUNCIL PENSION FUND: | $10.40 | 3700 | $ 38,480.00 |
| ANNUITY: | $ 6.00 | 3700 | $ 22,200.00 |
| DCTC: | $ .40 | 3700 | $ 1,480.00 |
| **LOST HOURLY DUES EQUIVALENT DAMAGES:** | $ 2.49 | 3700 | $ 9,213.00 |
| **LOST WAGE DAMAGES:** | $46.19 | 3700 | $170,903.00 |

TOTAL LOST WAGE DAMAGES TO HEALTH AND
WELFARE, PENSION, ANNUITY AND DCTC FUNDS: $ 39,275.50

LOST WAGE DAMAGES TO ADMINISTRATIVE DISTRICT COUNCIL 1: $131,627.50

LCS CONSTRUCTION CO.
MR. KEN LITTWIN, JR.
PAGE THREE OF FOUR

**REIMBURSEMENT OF INVESTIGATION EXPENSES AND LEGAL
FEES THROUGH THE DATE OF HEARING:**                          $ 43,938.27

**LOST INITIATION FEE AND MONTHLY DUES DAMAGES:**            $  5,250.00

**REPORTING VIOLATION FINES:**                               $  4,000.00

**TOTAL:**                                                   **$401,370.27**

BASED ON THE INFORMATION PRESENTED AND OUR DETERMINATIONS AS TO THE ADDITIONAL
INVESTIGATION EXPENSES AND LEGAL FEES AND COSTS, WHICH WE FIND TO BE $2,143.00, WE
ORDER JUNIOR AND LCS TO PAY THAT ADDITIONAL AMOUNT WHICH WE FIND IS THE SOLE
RESPONSIBILITY OF LCS AND JUNIOR. ALL OTHER PARTS OF THE DAMAGE AWARD ARE THE
JOINT AND SEVERAL RESPONSIBILITY OF JUNIOR, LCS, SENIOR, AND LOCAL.

IF THE UNION OR THE FUNDS OBTAIN EVIDENCE OF ADDITIONAL WORK PERFORMED IN
VIOLATION OF THE COLLECTIVE BARGAINING AGREEMENT BY JUNIOR, SENIOR, LCS, OR LOCAL,
THEY MAY FILE A NEW GRIEVANCE AND THE JOINT ARBITRATION BOARD WILL CONSIDER
AWARDING FURTHER DAMAGES. IF THERE IS ANY SUCH FURTHER CLAIM, IT WILL BE A NEW
MATTER BECAUSE THE JOINT ARBITRATION BOARD BELIEVES THIS DECISION RESOLVES
EVERYTHING PRESENTED TO US AS PART OF THE CURRENT GRIEVANCE.

AS A FURTHER REMEDY FOR THE VIOLATIONS WE HAVE FOUND, THE JOINT ARBITRATION BOARD
ORDERS JUNIOR AND LCS TO OBTAIN A BOND IN THE AMOUNT OF $120,000.00. THIS MUST BE IN
EFFECT WITHIN TEN DAYS OF THE DATE THIS AWARD IS MAILED TO THEM. THE BOND MUST
EITHER BE IN THE FORM OF A CASH BOND OR A SURETY BOND IN THE REQUIRED FORM, A COPY
WHICH WILL BE SENT TO JUNIOR AND LCS ALONG WITH THIS AWARD. JUNIOR AND LCS MUST
MAINTAIN THAT BOND AS PROVIDED IN THE CONTRACT. IF JUNIOR AND LCS FAIL TO PROVIDE
EITHER A REGULAR SURETY BOND IN THE REQUIRED FORM, A CASH BOND OR SOME
COMBINATION TOTALING $120,000.00 WITHIN TEN DAYS OF THE DATE THIS AWARD IS MAILED
TO THEM, JUNIOR AND LCS MUST STOP PERFORMING ANY WORK, REGARDLESS OF THE NAME OR
BUSINESS FORM USED, WITHIN THE GEOGRAPHIC AND CRAFT JURISDICTION OF
ADMINISTRATIVE DISTRICT COUNCIL 1, AND THEY MAY NOT RESUME SUCH WORK UNTIL THEY
HAVE SATISFIED THIS OBLIGATION.

THE JOINT ARBITRATION BOARD ALSO ORDERS THAT IN ADDITION TO ALL OTHER REPORTING
OBLIGATIONS THAT EXIST UNDER THE CONTRACT JUNIOR AND LCS MUST PROVIDE A WRITTEN
REPORT OF ALL JOB LOCATIONS WHERE THEY WORKED DURING THE PREVIOUS WEEK, OR THEY
MUST REPORT THAT THEY HAD NO WORK THAT WEEK, TO THE ADMINISTRATIVE DISTRICT
COUNCIL 1 OFFICE BY 4:00 P.M. EVERY MONDAY. IF JUNIOR AND LCS FAIL TO PROVIDE THE
NECESSARY JOB REPORTS BY 4:00 P.M. EVERY MONDAY, THEN JUNIOR AND LCS WILL BE LIABLE
FOR A $500.00 FINE EACH WEEK THE JOB REPORTS ARE NOT RECEIVED ON TIME, PLUS $100.00

LCS CONSTRUCTION CO.
MR. KEN LITTWIN, JR.
PAGE FOUR OF FOUR

EACH DAY AFTER THAT MONDAY UNTIL THE JOB REPORT FOR THAT WEEK IS RECEIVED BY
ADMINISTRATIVE DISTRICT COUNCIL 1.

IN ADDITION, THE JOINT ARBITRATION BOARD ORDERS JUNIOR AND LCS TO ALLOW THE UNION
TO PLACE STEWARDS OF ITS OWN CHOOSING ON ALL JOBS AND TO GIVE EACH STEWARD THE
OPPORTUNITY TO WORK ON EACH PROJECT WHENEVER WORK IS BEING PERFORMED. EACH
STEWARD MUST BE A QUALIFIED BRICKLAYER AND MUST MEET ALL REQUIREMENTS FOR
STEWARDS THAT EXIST UNDER THE CONTRACT. IF JUNIOR AND LCS ALLOW ADMINISTRATIVE
DISTRICT COUNCIL 1 TO PLACE A STEWARD OR STEWARDS ON ALL JOBS AS REQUIRED HERE,
AND THEY ALLOW EMPLOYEES TO PERFORM ANY BARGAINING UNIT WORK WITHOUT GIVING THE
STEWARD OR STEWARDS THE OPPORTUNITY TO DO OR BE PART OF THE CREW DOING SUCH
WORK, THEN IN ADDITION TO ANY OTHER REMEDY THAT MAY BE IMPOSED, JUNIOR AND LCS
WILL BE LIABLE TO THE APPOINTED STEWARD OR STEWARDS FOR ALL WAGES AND FOR ALL
CONTRIBUTIONS TO THE BENEFIT FUNDS AS THOUGH THE STEWARD OR STEWARDS HAD BEEN
PRESENT AND WORKING AT ALL TIMES BARGAINING UNIT WORK WAS BEING PERFORMED. IF
JUNIOR AND LCS DO NOT COMPLY WITH THIS PART OF THE AWARD BY ALLOWING
ADMINISTRATIVE DISTRICT COUNCIL 1 TO PLACE STEWARDS OF ITS OWN CHOOSING ON EACH
JOB, THEN IN ADDITION TO ANY OTHER REMEDY THAT MAY BE IMPOSED, THEY WILL BE
REQUIRED TO MAKE A PAYMENT TO ADMINISTRATIVE DISTRICT COUNCIL 1 EQUAL TO THE FULL
WAGE AND BENEFIT AMOUNT FOR ALL HOURS ON EACH JOB THAT ANY ONE OR MORE EMPLOYEES
OF JUNIOR OR LCS WERE PERFORMING ANY BARGAINING UNIT WORK.

UNLESS JUNIOR AND LCS MAKE THE PAYMENTS AS REQUIRED WITHIN TEN DAYS OF THE DATE
THIS AWARD IS MAILED TO THEM THEY MUST STOP PERFORMING ANY WORK, REGARDLESS OF
THE NAME OF BUSINESS FORM USED, WITHIN THE GEOGRAPHIC AND CRAFT JURISDICTION OF
ADMINISTRATIVE DISTRICT COUNCIL 1 AND THEY MAY NOT RESUME SUCH WORK UNTIL THEY
HAVE MADE THE REQUIRED PAYMENTS.

IF JUNIOR AND LCS FAIL TO FULLY COMPLY FULLY WITH THIS AWARD, THEY MUST REIMBURSE
THE UNION AND/OR THE BENEFIT FUNDS FOR ALL COSTS AND LEGAL FEES STARTING WITH THE
DATE THE AWARD IS MAILED TO THEM, AND THEY MUST PAY INTEREST ON ALL AMOUNTS OWED
AT THE RATE OF 10% A YEAR FROM THE DATE OF THE HEARING, JUNE 13, 2019 TO THE DATE OF
PAYMENT.


RICHARD H. LAUBER, JR.                    MICHAEL ERDENBERGER


GARY PORTER                               ROBERT FITAL



# *International Union*

## *Bricklayers* AND *of* *Allied Craftworkers*

ADMINISTRATIVE DISTRICT COUNCIL 1 OF ILLINOIS



**HEADQUARTERS**
660 N. INDUSTRIAL DRIVE
ELMHURST, ILLINOIS 60126

PHONE: 630•941•2300
FAX: 630•941•2301

**PRESIDENT**
JAMES ALLEN

**SECRETARY - TREASURER**
MICHAEL LOWERY

July 15, 2019

## VIA CERTIFIED & REGULAR MAIL

Mr. Ken Littwin, Jr.
LCS Construction Co.
1061 Waveland Avenue
Franklin Park, IL 60131

Mr. Ken Littwin, Jr.
LCS Construction Co.
3804 Wilkie Rd.
Rolling Meadows, IL. 60008

ken_littwinjr@yahoo.com

Dear Contractor:

Our letter dated May 10, 2019 informed Mr. Ken Littwin, Jr. and LCS Construction Co. that a Joint Arbitration Board hearing would be held on June 13, 2019 to address claims being made against you by the union. Despite receiving notice and being urged to attend, you did not attend or send anybody to attend on behalf of either of you. Accordingly, the Joint Arbitration Board heard the case based on the information, evidence, and arguments presented by Mike Alore, Doug Johnston and Barry Bennett and a decision was rendered.

The decision of the Joint Arbitration Board is enclosed.

Sincerely,

James Allen
President

JA/cmc

**Exhibit P**