# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| KENNETH LITTWIN, JR., | ) | |
|     Plaintiff and Counter-Defendant, | ) ) ) | |
| v. | ) ) | No. 19 CV 6826 |
| INTERNATIONAL UNION OF BRICKLAYERS, ADMINISTRATIVE DISTRICT COUNCIL 1 OF ILLINOIS and THE JOINT ARBITRATION BOARD OF THE INTERNATIONAL UNION OF BRICKLAYERS, | ) ) ) ) ) ) | Judge John J. Tharp, Jr. |
|     Defendants and, as to the first named defendant, Counterclaimant. | ) ) ) ) | |
| ------------------------------------------------------------------- | ) | ---------------------------- |
| ADMINISTRATIVE DISTRICT COUNCIL 1 OF ILLINOIS OF THE INTERNATIONAL UNION OF BRICKLAYERS AND ALLIED CRAFTWORKERS, AFL-CIO, | ) ) ) ) | |
|     Plaintiff, | ) ) | |
| v. | ) ) | No. 19 CV 8380 |
| KENNETH LITTWIN, JR., LOCAL CONTRACTING SERVICES CONSTRUCTION CO., and LCS CONSTRUCTION COMPANY, | ) ) ) | Judge John J. Tharp, Jr. |
|     Defendants. | ) ) | |
| ------------------------------------------------------------------- | ) | ---------------------------- |
| LCS CONSTRUCTION CO., LOCAL CONTRACTING SERVICES CONSTRUCTION CO., and KENNETH W. LITTWIN JR., | ) ) ) ) | |
|     Plaintiffs, | ) ) | |
| v. | ) ) | No. 20 CV 7323 |
| ADMINISTRATIVE DISTRICT COUNCIL 1 OF ILLINOIS OF THE INTERNATIONAL UNION OF BRICKLAYERS AND ALLIED CRAFTWORKERS, | ) ) ) ) | Judge John J. Tharp, Jr. |
|     Defendant. | ) ) | |

**ORDER**

For the reasons set forth in the Statement below, the summary judgment motions of Kenneth Litwin Jr., LCS Construction Company, and Local Contracting Services Construction Co. in case Nos. 19-cv-06826 [29] and 19-cv-08380 [34] are denied, and the Union's consolidated motion for summary judgment filed in case No. 19-cv-06826 [33] is granted. Judgment will be entered for the Union in case Nos. 19-cv-06826 and 19-cv-08380 and the cases are terminated. A telephone status hearing in case No. 20-cv-07323 will be held on December 21, 2022, at 9:15 a.m. Dial-in instructions will be provided by separate docket entry.

**STATEMENT**

The parties in these related cases petition separately to vacate and to enforce three arbitration awards pursuant to the Labor Management Relations Act, 29 U.S.C. § 185. The parties seeking to vacate the awards are Kenneth Littwin, Jr. ("Junior"), LCS Construction Company ("LCS"), and Local Contracting Services Construction Co. ("Local"). Junior owns LCS; his father, Kenneth Littwin, Sr. ("Senior"), who is not a party to any of these cases, owns Local. The party seeking to enforce the awards is the Administrative District Council 1 of Illinois of the International Union of Bricklayers and Allied Craftworkers, AFL-CIO ("Union"), a labor organization. Each side seeks summary judgment. The facts that follow are undisputed.[1]

**BACKGROUND**

In March 2007, LCS signed a Memorandum of Understanding entering into a collective bargaining agreement with the Union. SOF ¶ 4. The Memorandum of Understanding, which is effective until affirmatively canceled, incorporates the substantive terms of a master collective bargaining agreement negotiated between the Union and various employer associations. *Id.* ¶ 5. This Association Agreement, in turn, requires contract grievance disputes to be submitted to and resolved by a Joint Arbitration Board. *Id.* ¶ 8.[2]

A.  June 2017 Award

In June 2017, the Union filed a grievance before the Board alleging numerous violations of the Association Agreement by LCS. *Id.* ¶ 10. The grievance also alleged—based on the nature of Junior's relationship to LCS and the manner in which he operated LCS—that Junior was bound to the Association Agreement and personally responsible for LCS' obligations. *Id.* After the Union properly provided notice of the grievance to Junior and LCS, the Board held a hearing on June 21, 2017, at which neither Junior nor LCS appeared. *Id.* ¶¶ 10, 12. Subsequently, the

---

[1] All case references throughout this opinion are to cases filed in the Northern District of Illinois, and unless otherwise annotated, all citations to court filings pertain to case No. 19-cv-06826. The shorthand "SOF" refers to Union's Statement of Facts, ECF No. 35. Because no response to Union's Statement of Facts was filed, the facts asserted therein are deemed undisputed. *See* N.D. Ill. Local Rule 56.1(e).

[2] None of the parties explicitly acknowledges Illinois law as the law governing the Association Agreement. Each, however, cites to and discusses Illinois law throughout their briefs, and thus the parties implicitly agree that Illinois law governs.

Board ruled in the Union's favor, awarding the Union various relief, including $153,075 in damages, and finding, among other things, that "Ken Littwin Jr.[] is personally bound to the contract LCS Construction Co. signed with [the Union], and is personally responsible for all obligations under that contract, including those obligations being imposed in this decision." Ex. G to Union's Mot. for Summ. J. 1–3, ECF No. 34-2 ("June 2017 Award").

The Union served the arbitration award on Junior and LCS on January 17, 2018. Four months later, the Union brought suit in this Court to enforce the award (case No. 18-cv-03519). Junior answered on September 5, 2018. In his answer, for the first time in the 231 days since service of the June 2017 Award, Junior contested the Board's finding that he was bound by the Association Agreement and personally subject to the award. SOF ¶ 16 & n.2; *see* Answer ¶¶ 13–19, No. 18-cv-03519, ECF No. 12. In October 2018, the Union settled the award's "monetary obligations" with Junior and LCS but dismissed without prejudice all other claims related to the award. Stipulation of Dismissal, No. 18-cv-03519, ECF No. 20; Ex. A to Junior Decl., ECF No. 48 ("Settlement Agreement").

B.  December 2018 and April 2019 Awards

The Union filed a second grievance in late 2018. This grievance primarily implicated Senior and Local but also named Junior and LCS. It otherwise proceeded in similar fashion to the previous grievance filed against Junior and LCS: The Union alleged numerous violations of the Association Agreement by Local; notice was provided to all four named parties; a hearing was held before the Board on December 21, 2018; no named party appeared; and ultimately, the Board issued an award for $399,227 and other relief against Senior and Local. SOF ¶¶ 17–19, 23. In so holding, the Board necessarily found that despite LCS being the only formal signatory to the Memorandum of Understanding, an "overwhelming amount of evidence . . . support[ed] the Union's claims that Senior and Local should both be found to be bound to the [Memorandum of Understanding] LCS signed based on the relationship among the individuals and businesses, the way the businesses were operated, and . . . [Junior and Senior's apparent] plan to use the separate businesses to avoid the obligations of the [Association Agreement]." Ex. J to Union's Mot. for Summ. J. 2–3, ECF No. 34-2 ("December 2018 Award"). The Board summarized the evidence on which it based its determination that the putative boundary between the companies was a chimera:

> [D]uring the time that these issues have been developing and were being investigated, Senior and Junior both performed work for each of the businesses[,] . . . supervise[d] employees on the various jobs[,] . . . [and] dealt with representatives of general contractors or customers on behalf of both of the businesses. . . . [T]he two businesses used at least some of the same employees, . . . [and] shared equipment, . . . a business address and yard, and . . . vehicles. . . . [M]aterial for work on jobs was ordered in the name of one business even though the job was supposedly being performed by the other business. . . . [S]ome employees were not sure on a given job whether they were working for one business or the other and whether they were working under a Union contract or not, and that at least some employees reported and believed that

3

> they had been changed from working for a Unionized business under a Union contract to being non-Union and that this change occurred because the bosses decided they would do things differently. We also note the similarity in the names of the businesses, and we believe that was not a coincidence but was part of an effort to create confusion and move from one side to the other depending on what seemed more convenient and profitable at the moment.

*Id.*

The Union also argued at the December 2018 hearing that "because Junior and LCS are bound to the contract, they should be found responsible for violations committed by Local and Senior and should be jointly responsible along with Local and Senior for all damages and other relief." *Id.* at 9. But because Junior and LCS had not attended the hearing and the *pro se* response letters Junior sent to the Board indicated Junior may not have "understood [how] the claims against him and LCS . . . fit in with the claims against Local and Senior," the Board decided to "separate the claims . . . against Junior and LCS from the claims against Local and Senior" and permitted the Union to initiate a new grievance against Junior and LCS "within three months of the date [the December 2018] award [was] mailed." *Id.*

In addition and by its own terms, the effective date of the December 2018 Award was delayed in order to provide Senior and Local an opportunity for rehearing. *Id.* at 5. That opportunity was taken, and on April 3, 2019, a rehearing was held. SOF ¶ 29. This time, Senior appeared on behalf of himself and Local and presented evidence relevant to the Board's original damages estimates. *Id.* ¶¶ 29–30. Nonetheless, the Board concluded that "the numbers contained in the [December 2018 Award] are more likely to be accurate than any other set of numbers." Ex. K to Union's Mot. for Summ. J. 3, ECF No. 34-2 ("April 2019 Award"). Accordingly, the Board issued an additional award "affirm[ing] all parts of the findings in the [December 2018 Award]" and holding that the December 2018 Award was "now considered to be final." *Id.*

Thereafter, Senior brought suit against the Union to vacate the April 2019 Award (case No. 19-cv-05407) resulting in a joint stipulation that the April 2019 Award, as it applied to Senior, was "null and void and of no legal effect." Ex. 2a-A to Junior's Statement of Uncontested Facts 1, No. 19-cv-08380, ECF No. 36 (joint stipulation); Notice of Dismissal, No. 19-cv-05407, ECF No. 9. Local, for its part, accepted service of the April 2019 Award on May 31, 2019, but did not challenge it before filing its answer in the present matter—270 days after service—on February 25, 2020. SOF ¶¶ 33–34.

C.  June 2019 Award

In May 2019, the Union filed a third grievance. SOF ¶ 35. This one, like the first, alleged that Junior and LCS violated the Association Agreement. *Id*. Notice was provided to Junior and LCS and a Board hearing was held on June 13, 2019. *Id.* ¶¶ 35–36. Again, neither Junior nor LCS appeared. *Id*. The Board noted that Junior was personally bound to the Association Agreement by virtue of the June 2017 Award, and in due course, issued an award against Junior and LCS for $403,513 in damages, among other relief. Ex. O to Union's Mot. for Summ. J. 1–3,

4

ECF No. 34-2 ("June 2019 Award"). The Union served the award on Junior and LCS on July 18, 2019. SOF ¶ 44.

D. Procedural History and June 2020 Award

On October 15, 2019—eighty-nine days after service of the June 2019 Award—Junior brought suit seeking a declaration that he is not subject to the Association Agreement and therefore not bound by the June 2019 Award (case No. 19-cv-06826). Junior, however, did not serve the Union until January 2020. In the meantime, the Union initiated its own action to enforce the June 2019 Award against Junior and LCS and to enforce the April 2019 Award against Local (case No. 19-cv-08380). The Union's case was reassigned to this Court as a related action. Order, ECF No. 13. The Union then replicated this complaint as a counterclaim in Junior's suit. Both sides filed cross-motions for summary judgment. As defendants in the Union's suit, Local and LCS joined Junior in arguing they are not bound by the relevant awards.[3]

While briefing for the parties' cross-motions for summary judgment was underway, the Union filed yet another grievance against Junior, LCS, and Local. According to the pleadings in a second petition to vacate initiated by Junior, LCS, and Local in December 2020 (case No. 20-cv-07323), this new grievance led the Board to issue a June 2020 Award against Junior, LCS, and Local. Aside from the details of the June 2020 Award, Junior, LCS, and Local's objections to the award appear identical to objections raised in the two cases that are now fully briefed for summary judgment. *See* Compl. 1–4, No. 20-cv-07323, ECF No. 1. Accordingly, this third case was also reassigned to this Court. Order, ECF No. 65. Nevertheless, the third case was held in abeyance pending resolution of the cross-motions for summary judgment. This ruling therefore does not address the June 2020 Award.

E. Present Dispute

Junior raises a number of legal arguments in contending that the relevant awards may not be enforced against him and, to a lesser extent, LCS and Local. His principal contention is that the Board exceeded its authority under the Association Agreement when, as part of the June 2017 and 2019 Awards, it found that LCS was his alter ego and pierced LCS' corporate veil to hold him personally liable for LCS' contractual obligations. He also contends that his October 2018 settlement agreement released him from all liability under the June 2017 Award; that the June 2019 Award is both untimely under the Association Agreement and barred by Illinois' Business Corporation Act, 805 Ill. Comp. Stat. 5/12.45(e); and that the Norris-LaGuardia Act, 29 U.S.C. § 107, strips this Court of authority to grant the Union the equitable relief it seeks. (Other frivolous arguments are scattered about Junior's brief; they merit no discussion.) The Union argues that Junior's arguments are either untimely and/or specious. Neither side has identified a genuine issue of material fact relevant to these issues. Summary judgment is therefore appropriate if the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

---

[3] In case No. 19-cv-06826, Junior also named the Board as a defendant. The Union asserts the Board is not an entity that can sue or be sued. Union's Mot. for Summ. J. 1 n.1, ECF No. 34. Junior does not challenge this assertion and, in any event, never served the Board. *Id.*; *see* Summons, ECF No. 8.

**DISCUSSION**

The Labor Management Relations Act extends federal question jurisdiction to suits between employers and labor organizations for violations of collective-bargaining agreements. 29 U.S.C. § 185. Nonetheless, "the desirable method for settlement of grievance disputes arising over the application or interpretation of an existing collective-bargaining agreement" is the "method agreed upon by the parties." *Id.* § 173(d). Hence, when collective-bargaining agreements require grievances to be settled through arbitration, as they often do, the district court's role in enforcement suits is "very limited." *United Steelworkers of Am. v. Am. Mfg. Co.*, 363 U.S. 564, 567 (1960). In these instances, the arbitrator's judgment, not the court's, is what the parties bargained for. *Id.* at 567–68. Courts are therefore "not authorized to reconsider the merits of an [arbitration] award even though the parties may allege that the award rests on errors of fact or on misinterpretation of the contract." *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 36 (1987). "As long as the arbitrator's award 'draws its essence from the collective bargaining agreement,' and is not merely 'his own brand of industrial justice,' the award is legitimate." *Id.* (quoting *United Steelworkers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 597 (1960)).

The principal issue here is that Junior claims he never personally bargained for arbitration. His company, LCS, was the signatory to the Memorandum of Understanding, not him. Accordingly, he maintains that he cannot be personally bound by the Association Agreement. The Board disagreed. In its June 2017 Award, the Board applied the alter ego doctrine and pierced LCS' corporate veil to hold Junior jointly and severally liable for LCS' contractual obligations. *See* June 2017 Award at 1, ECF No. 34-2 ("Based on the evidence about the relationship between [Junior] and [LCS], [Junior's] manner of operating the business, and his failure to assure that the business satisfie[d] its obligations, the [Board] finds that [Junior] is personally bound to the contract [LCS] signed with [the Union] and is personally responsible for all obligations under that contract, including those obligation being imposed in this decision."). Junior argues that this portion of the June 2017 Award did not "draw its essence" from the Association Agreement, therefore the Board was not empowered to grant this form of remedy.

Junior's argument, at least with respect to the June 2017 Award, is time-barred. "It is well-settled law in this circuit that 'the failure to challenge an arbitration award within the applicable limitations period renders the award final.'" *McKinney Restoration, Co. v. Ill. Dist. Council No. 1 of Int'l Union of Bricklayers*, 392 F.3d 867, 869 (7th Cir. 2004) (quoting *Int'l Union of Operating Engineers, Loc. 150 v. Centor Contractors, Inc.*, 831 F.2d 1309, 1311 (7th Cir. 1987)). The Labor Management Relations Act itself does not provide a statute of limitations for actions challenging arbitration awards, so timeliness is determined "by reference to the appropriate state statute of limitations." *Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am. v. Hoosier Cardinal Corp.*, 383 U.S. 696, 705 (1966). For collective-bargaining agreements governed by Illinois law, "the 90-day period in the Illinois version of the Uniform Arbitration Act is the appropriate statute of limitations." *Plumbers' Pension Fund, Loc. 130 v. Domas Mech. Contractors, Inc.*, 778 F.2d 1266, 1268 (7th Cir. 1985); *see* 710 Ill. Comp. Stat. 5/12(b). Thus, "[t]he rule is a simple one: If you receive notice of an adverse decision in a federal labor arbitration, challenge it within 90 days or expect to pay up." *Int'l Union of Operating Eng'rs, Loc. 150 v. Rabine*, 161 F.3d 427, 434 (7th Cir. 1998).

The record is clear that Junior did not challenge the June 2017 Award within ninety days.[4] (For the same reason, any challenges to the June 2017 or April 2019 Awards asserted on behalf of LCS or Local are also untimely.) Junior did, however, file the present suit to challenge the June 2019 Award eighty-nine days after he received notice of it. In that award, the Board simply incorporated its veil-piercing holding from June 2017: "The award issued following the hearing on June 21, 2017, found that [Junior] is personally bound to the [Association Agreement], and that finding and award stand." June 2019 Award at 1, ECF No. 34-2. Junior's challenge to the June 2019 Award, then, is timely. He reasserts that the Board acted beyond the scope of the Associate Agreement when it reaffirmed its alter ego finding and pierced LCS' corporate veil to hold him personally liable for the June 2019 Award.

To be clear, Junior only argues that the June 2019 Award against him is invalid vis-à-vis the Association Agreement. He does not ask this Court—independent of the Board's determination—to adjudicate whether LCS was his alter ego. This Court would otherwise have that authority. *Int'l Union of Operating Eng'rs, Loc. 150 v. Rabine*, 161 F.3d 427, 433 (7th Cir. 1998);[5] *see United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960)

---

[4] Junior does not suggest that an answer—such as his answer in case No. 18-cv-03519, which preceded his present suit to vacate—can toll the statute of limitations. *Cf. Painters' Dist. Council No. 30 v. Rock-It Interiors, Inc.*, 190 F. Supp. 3d 803, 811–12 (N.D. Ill. 2016) (the only avenue for relief under circuit precedent is a timely motion to vacate and an answer cannot be construed as a motion to vacate). Even if it could, Junior's answer came well after the limitations period (231 days after service of the June 2017 Award).

[5] The rule quoted earlier from *Rabine* ("[t]he rule is a simple one: . . . challenge [adverse arbitration decisions] within 90 days or expect to pay up," 161 F.3d at 434) may not be so simple when the context of the case involves challenges to contract formation. In *Rabine,* the Seventh Circuit declined to apply the rule against a firm that was not a party to the CBA after rejecting the merits of the union's argument that the firm was the alter ego of a CBA signatory where the non-signatory firm was "not before the arbitrator," "not a party to the CBA in any sense of the word," and the union had failed "to identify a single connection between [the non-signatory firm] and the grievance and arbitration proceedings." *Id.* at 433. *Rabine*, then, supports the proposition that challenges to contract formation are not subject to the 90-day statute of limitations. *See Sheet Metal Workers Int'l Ass'n Loc. Union No. 1 v. Grimm Heating & Air Conditioning, Inc.*, No. 12-1250, 2013 WL 12241281, at *5 (C.D. Ill. July 11, 2013) (construing *Rabine* similarly; quoting it for the principle that employers should "not [be] forced to submit to contracts to which they are not parties or to terms they did not accept"). There is support in several other circuits for the same proposition. *See Loc. 36 Sheet Metal Workers' Int'l Ass'n v. Whitney*, 670 F.3d 865, 869 (8th Cir. 2012) ("[A] non-signatory to an arbitration agreement need not . . . timely initiate a court action to vacate the arbitrator's award in order to have 'the question of whether the parties agreed to arbitrate . . . be decided by the court, not the arbitrator.'" (quoting *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986))); *Loc. Union No. 38, Sheet Metal Workers' Int'l Ass'n v. Custom Air Sys., Inc.*, 357 F.3d 266, 268 (2d Cir. 2004) (same). Nonetheless, this reading of *Rabine* does appear to be in some tension with the Seventh Circuit's earlier opinion in *Sullivan v. Gilchrist* where it held time-barred a non-signatory's argument that an award was a nullity because it never contractually agreed to arbitration. 87 F.3d 867, 871 (7th Cir. 1996). In any event, the tension between *Rabine* and *Sullivan* does not need to be resolved

("[T]he judicial inquiry under [the Labor Management Relations Act] must be strictly confined to the question whether the reluctant party did agree to arbitrate the grievance or did agree to give the arbitrator power to make the award he made."); *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986) ("Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator.").

In his answer, Junior does plead as an affirmative defense that "[a] party cannot be required to submit to arbitration any dispute which he has not agreed to submit." Answer 15, No. 19-cv-08380, ECF No. 22. "If the Union relies on the theory of successorship or alter ego liability," his answer proclaims, "it must first establish such liability and application of the [Association Agreement] in a court of law prior to subjecting a party to compulsory arbitration." *Id*. But Junior seems to have abandoned this argument at the summary judgement stage. This Court has strained to find any semblance of this argument within his summary judgment brief. At the very most, Junior offers a solitary citation to *Granite Rock Co. v. International Brotherhood of Teamsters*, 561 U.S. 287, 296–97 (2010), for the proposition that disputes concerning contract formation are "generally for courts to decide." But this reference comes as a non-sequitur footnote within the section of Junior's brief addressing his Norris-LaGuardia Act argument, and Junior offers no explanation as to how *Granite Rock* should apply (other than to mention that "[t]he Court should note" it). Junior's Mot. for Summ. J. 9 n.4, ECF No. 30; Junior's Mot. for Summ. J. 6 n.2, No. 19-cv-08380, ECF No. 35. He also barely lifts a finger to point to any facts that would aid in an alter ego evaluation. In his "Standard for Piercing Corporate Veil" section—which is nothing more than a series of disjointed, decontextualized, and undeveloped block quotations—Junior ends with a single proclamation: "Junior ran LCS as a separate entity keeping his personal assets apart from the Corporation." Junior's Mot. for Summ. J. 6, ECF No. 30. That's it. He does not even make the effort to induce a conclusion from this alleged fact. It is not surprising, then, that the Union never responded to an argument that this Court has authority to determine whether Junior was party to the contract. Through either strategic omission or inept presentation, Junior clearly waived it.[6]

The present inquiry is therefore narrow: Did the Board exceed its contractual prerogative to interpret and apply the Association Agreement when it found LCS to be Junior's alter ego and accordingly held Junior to be personally bound by the Association Agreement? To reiterate, arbitral awards are enforceable "so long as the arbitrator's interpretation can in some rational manner be derived from the agreement, viewed in the light of its language, its context, and other indicia of the parties' intention." *Ameren Ill. Co. v. Int'l Bhd. of Elec. Workers*, 906 F.3d 612, 619 (7th Cir. 2018) (quoting *Amoco Oil Co. v. Oil, Chem. & Atomic Workers Int'l Union, Local 7–1, Inc.*, 548 F.2d 1288, 1294 (7th Cir. 1977) (alterations omitted). Furthermore, "[w]hen an

---

because Junior and Local do not challenge contract formation. They argue only that the Board lacked authority under the Association Agreement to make an alter ego determination.

[6] Evidence of Junior's waiver is perhaps most conspicuous in Junior's reply, in which he summarizes via a bullet-point list his various arguments for why the June 2017 and 2019 Awards are unenforceable against him. No argument in that list even tacitly requests this Court to independently determine that Junior is not party to the Association Agreement. *See* Junior Reply 2, ECF No. 45.

arbitrator resolves disputes regarding the application of a contract, and no dishonesty is alleged, the arbitrator's 'improvident, even silly factfinding' does not provide a basis for a reviewing court to refuse to enforce the award.'" *Id.* at 616 (quoting *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001)).

Here, section 10.8 of the Association Agreement states in part that "[t]he [Board] . . . shall have full power to enforce this Agreement and may impose such awards, orders, damages, lost wage damages, fines, sanctions, and ***other remedies*** as the [Board] . . . deem[s] fit." Ex. 1 to Junior's Statement of Uncontested Facts 4, ECF No. 31 (Association Agreement) (emphasis added). The emphasized portion of that section ends the inquiry, for piercing the corporate veil is a form of remedy. *See Buckley v. Abuzir*, 2014 IL App (1st) 130469, ¶ 9, 8 N.E.3d 1166, 1169 ("Piercing the corporate veil is not a cause of action but, rather, a means of imposing liability in an underlying cause of action."). Moreover, arbitrators, "especially . . . when it comes to formulating remedies," are afforded "flexibility in meeting a wide variety of situations." *Enter. Wheel*, 363 U.S. at 597. Junior himself acknowledges that an "arbitrator's power to formulate a specific remedy is limited only by the parameters of the [collective-bargaining agreement]." Junior's Mot. for Summ. J. 3, ECF No. 30. Yet he points to no section of the Association Agreement that may be fairly read to limit section 10.8 generally or the Board's power to veil-pierce specifically.

Junior's remaining arguments are even less developed and so require only brief discussion. Junior says his October 2018 settlement agreement with the Union released him from ***all*** liability under the June 2017 Award, not just the award's monetary obligations. The Union contends the settlement left its veil-piercing component intact. Junior specifically argues that recital N of the settlement agreement supports his position. But far from supporting Junior's argument, that recital squarely repudiates it. The preceding recital M states that "[t]he Parties disagree over whether the Arbitration Award . . . is properly subject to confirmation and enforcement, and also disagree about other matters." Settlement Agreement at 3, ECF No. 48. Recital N then clarifies that "***[w]ithout prejudice to any of their positions regarding any other matters between them***, the Parties wish to resolve the dispute between them over the monetary obligations imposed by the Arbitration Award . . . ." *Id.* (emphasis added); *see also* Stipulation of Dismissal, No. 18-cv-03519, ECF No. 20 ("[Union] dismisses this suit without prejudice . . . but with the claims regarding 'Monetary Obligations' as defined in the parties' settlement agreement effective October 23, 2018, being fully resolved through settlement . . . ."). And even if recital N were not clear enough, the settlement agreement continues: "For sake of assurance, the release being granted here does not include . . . claims under the Arbitration Award except as to the Monetary Obligations, claims regarding the status of the CBA or the identity of persons or businesses bound to the CBA . . . ." Settlement Agreement at 4, ECF No. 48. Hence the October 2018 settlement agreement did nothing to void the veil-piercing component of the June 2017 Award.

Next, Junior asserts that the June 2019 Award was untimely under the Association Agreement, which requires grievances to be filed "within ninety (90) days of the date of the occurrence giving rise to the grievance . . . ." Association Agreement at 2, ECF No. 31. But recall that the June 2019 Award addressed a grievance against Junior and LCS that was originally integrated with a grievance brought against Senior and Local. In the December 2018 Award, the Board split the claims within that composite grievance and expressly authorized the

Union to refile a new grievance naming only Junior and LCS within three months of the effective date of the award. December 2018 Award at 9, ECF No. 34-2. The December 2018 Award was not finalized until the Board issued the April 2019 Award, and thus the grievance underlying the June 2019 Award was dutifully filed within the allotted three months. The question, then, is whether the original grievance underlying the December 2018 Award was timely. The Board said yes. *See* December 2018 Award at 3, ECF No. 34-2 ("Turning to the jurisdiction and timeliness claims . . . we reject both of those."). The June 2019 Award is therefore timely.

Junior next attempts to argue that his personal liability under the June 2019 Award is barred by Illinois' Business Corporation Act. That Act states that "no shareholder, director, or officer shall be personally liable . . . for the debts and liabilities of the corporation incurred during the period of administrative dissolution by reason of the fact that the corporation was administratively dissolved at the time the debts or liabilities were incurred." 805 Ill. Comp. Stat. 5/12.45(e). It is undisputed that LCS was involuntarily dissolved in October 2017. SOF ¶ 3. Junior claims that LCS was then reinstated on July 6, 2020. Junior Resp. 2, ECF No. 40.[7] If true, the liabilities addressed by the June 2019 Award would have arisen "during the period of [LCS'] administrative dissolution." But section 12.45 does nothing more than codify the Illinois doctrine of "'relation back,' which permits a reinstated corporation to ratify actions taken on its behalf during a period of dissolution, and gives those actions legal effect from the time they were taken." *Dep't of Revenue v. Semenek*, 194 Ill. App. 3d 616, 618, 551 N.E.2d 314, 315 (1990) (citations omitted). More importantly, section 12.45(e) only applies to "liabilities of the corporation." It "does not transform individual liability to corporate liability . . . ." *Semenek*, 194 Ill. App. 3d at 618, 551 N.E.2d at 315. Thus, because the June 2019 Award imposes **individual liability** on Junior, section 12.45(e) is inapposite. *See also Henderson-Smith & Assocs., Inc. v. Nahamani Fam. Serv. Ctr., Inc.*, 323 Ill. App. 3d 15, 23, 752 N.E.2d 33, 40 (2001) ("Illinois courts have understood the intent of the legislature to be that, . . . parties should not be able to employ these provisions to evade otherwise legitimate debts.").

Finally, Junior argues that the Norris-LaGuardia Act, 29 U.S.C. § 107, strips this Court of authority to enforce the equitable relief included within the April and June 2019 Awards. If enforced verbatim, those awards would oblige this Court to not only assess damages but to enjoin Junior, LCS, and Local from various ongoing activities that violate the Association Agreement. Junior futilely hides behind the Norris-LaGuardia Act to prevent that. In relevant part, the Norris-LaGuardia Act denies federal courts "jurisdiction to issue a temporary or permanent injunction in any case involving or growing out of a labor dispute" unless and until the Act's enumerated procedural requirements are satisfied. 29 U.S.C. § 107. But "[t]he failure to arbitrate was not a part and parcel of the abuses against which the Act was aimed." *Textile Workers Union of Am. v. Lincoln Mills of Ala.*, 353 U.S. 448, 458 (1957). As the Supreme Court explained in *Lincoln Mills*:

> Though a literal reading might bring [this] dispute within the terms of the [Norris-LaGuardia] Act, [there is] no justification in policy

---

[7] As evidentiary support for this asserted fact, Junior cites his own declaration wherein he claims to have applied for LCS' reinstatement "[s]ome time ago." Junior Decl. ¶ 6, ECF No. 48. The specific reinstatement date of July 6, 2020 is unsupported.

10

> for restricting [the Labor Management Relations Act] to damage suits, leaving specific performance of a contract . . . to the inapposite procedural requirements of [the Norris-LaGuardia] Act. Moreover, [as the Supreme Court] held in *Virginian Ry. Co. v. System Federation No. 40*, 300 U.S. 515 (1937) and in *Graham v. Brotherhood of Firemen and Enginemen*, 338 U.S. 232 (1949), . . . the Norris-LaGuardia Act does not deprive federal courts of jurisdiction to compel compliance with the mandates of the Railway Labor Act [an analogous labor statute]. [The Supreme Court] followed the same course in *Syres v. Oil Workers International Union, Local No. 23*, 350 U.S. 892 (1955), which was governed by the National Labor Relations Act.

*Id.* (citations altered or omitted). The bottom line, then, is this: "The congressional policy in favor of the enforcement of agreements to arbitrate grievance disputes being clear, there is no reason to submit them to the requirements of . . . the Norris-LaGuardia Act." *Id.* at 458–59.

\* \* \*

For the foregoing reasons, the June 2019 Award in its entirety is enforceable against Junior and LCS and the April 2019 Award in its entirety is enforceable against Local. The Union's motion for summary judgment is granted and Junior, LCS, and Local's motions for summary judgment are denied.

Date: December 1, 2022

John J. Tharp, Jr.
United States District Judge